In the Matter of INDUSTRIAL LIAISON COMMITTEE OF THE NIAGARA FALLS AREA CHAMBER OF COMMERCE et al., Appellants, v HENRY G. WILLIAMS, as Commissioner of Environmental Conservation, Respondent, and HUDSON RIVER SLOOP CLEARWATER, INC., et al., Intervenors-Respondents. (And Another Related Proceeding.)

Third Department, November 5, 1987

### APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna (John Hanna, Jr.,* of counsel), for appellants.

*Robert Abrams, Attorney-General (Francis J. Keehan* of counsel), for respondent.

*Philip Weinberg* for intervenors-respondents.

*Earl T. Robinson* for Buffalo Area Advisory Council on Industrial Wastewater of the Buffalo Sewer Authority and another, *amici curiae.*

### OPINION OF THE COURT

MIKOLL, J.

The Environmental Conservation Law sets forth two primary ways to control water pollution: water quality standards (involving the purity of water itself [ECL 17-0301]), and effluent limitations (involving the discharge of chemical substances into the water [ECL 17-0801 *et seq.*]). Discharge of chemicals into the surface waters of New York is prohibited

unless made pursuant to a State pollutant discharge elimination system (SPDES) permit (ECL 17-0803). These permits, which prescribe effluent limitations, are issued on a case-by-case basis. Water quality standards, which prescribe, on a substance-by-substance basis, acceptable levels of toxic chemicals, are used primarily as a basis for setting the effluent limitations in SPDES permits. Consequently, a close relationship exists between the two methods of water pollution control (see, ECL 17-0811; 6 NYCRR 754.1).

The Department of Environmental Conservation (DEC) published in 1983 the "Technical and Operational Guidance Series" (TOGS), which contained a section (known as TOGS 84-W-38) setting numerical water quality standards for approximately 200 toxic chemicals (the regulated substances). The TOGS water quality guidelines, although not officially promulgated as regulations, were widely used for establishing the effluent limitations in SPDES permits.

In 1984, DEC sought to amend 6 NYCRR parts 701 and 702 by adopting the substance of the TOGS water quality guidelines as official regulations. The proposed amendments (amendments) would specify the methodologies to be used in calculating ambient water quality standards for each of the regulated substances and would adopt an appendix to 6 NYCRR 701 which would contain the actual standards.

In promoting the amendments, DEC prepared a draft generic environmental impact statement (DGEIS) which was approved for release on September 11, 1984. It then published a notice of proposed rulemaking on September 26, 1984 in the State Register, which summarized the proposed amendments and contained a regulatory impact statement (RIS) and a regulatory flexibility analysis (RFA) in accord with the State Administrative Procedure Act. The notice also gave the times and locations for public hearings on the amendments and stated that the full text of the amendments was available upon request. The notice was mailed directly to approximately 6,000 individuals.

Responding to requests from affected businesses, DEC made available background "fact sheets" for many of the regulated substances, which contained the scientific data supporting DEC's proposed numerical water quality standards. Fact sheets for 37 of the regulated substances were produced on October 23, 1984 and 67 additional sheets were made available on October 26, 1984. Public hearings on the amendments were

held in November 1984 on five different days at five separate locations. As the final set of fact sheets was not available until January 9, 1985, DEC extended the hearing comment period until February 15, 1985 and withdrew from its proposed amendments all regulated substances for which it was unable to furnish fact sheets.

Extensive comment on the amendments was received by DEC which responded in a "Responsiveness Summary" attached to the final generic environmental impact statement (FGEIS). Respondent officially adopted the amendments on July 3, 1985 and they became effective on August 2, 1985. Subsequently, petitioners brought the instant proceeding pursuant to CPLR article 78 seeking to set aside respondent's promulgation of the ambient water quality standards. Supreme Court dismissed the petition and this appeal by petitioners followed.

Initially, it should be noted that DEC's and the intervenors' argument that petitioners do not have standing to challenge DEC's compliance with the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) is not persuasive. However, petitioners' contentions that DEC failed to comply with the relevant procedures of the State Administrative Procedure Act and SEQRA, and that DEC violated the Environmental Conservation Law by adopting unreasonable standards and failing to give the proposed amendments "proper study", are without merit. The judgment of Supreme Court dismissing the petition should therefore be affirmed. The several issues raised by petitioners' challenge are separately addressed below.

### STANDING TO CHALLENGE COMPLIANCE WITH SEQRA

In order to establish standing to challenge compliance with SEQRA, "[a] petitioner need only show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute" *(Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 9). SEQRA defines environment to include socioeconomic elements (ECL 8-0105 [6]; *see,* 6 NYCRR 617.2 [k]; *see also,* Ulasewicz, *The Department of Environmental Conservation and SEQRA: Upholding its Mandates and Charting Parameters for the Elusive Socio-Economic Assessment,* 46 Alb L Rev 1255, 1266 [1982]).

Petitioners' allegations of environmental harm are spec-

ulative; petitioners allege personal injury from such harm only because they "use" the surface waters of the State. For purposes of the National Environmental Policy Act of 1969 (NEPA) (42 USC § 4321 *et seq.*), petitioners' environmental concerns would appear to be too insignificant to confer standing *(see, Robinson v Knebel,* 550 F2d 422). However, in light of SEQRA's broad definition of "environment" and petitioners' allegations of environmental harm, petitioners have established standing to challenge DEC's compliance with SEQRA *(see, Matter of Niagara Recycling v Town Bd.,* 83 AD2d 335, 341, *affd* 56 NY2d 859; *see also, Webster Assocs. v Town of Webster,* 112 Misc 2d 396, 400-402).

### COMPLIANCE WITH SEQRA

■ Petitioners' contention that DEC violated the provisions relating to the preparation of environmental impact statements (EIS) because DEC failed to address (1) the environmental impact of the amendments, and (2) their "cumulative impact" was correctly rejected by Supreme Court. An EIS is only required to address "specific *significant* environmental impacts which can be reasonably anticipated" *(Aldrich v Pattison,* 107 AD2d 258, 266 [emphasis in original]; *see,* 6 NYCRR 617.14 [c]). "Not every conceivable environmental impact * * * must be identified and addressed before a [FGEIS] will satisfy the substantive requirements of SEQRA" *(Aldrich v Pattison, supra,* at 266; *see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). An EIS "shall be analytical and not encyclopedic" (6 NYCRR 617.14 [b]).

Finally, petitioners' argument that the amendments should be invalidated because DEC failed to submit a supplemental DGEIS reflecting the changes between the fact sheets and the originally proposed standards is raised for the first time on appeal and is therefore not properly before this court *(see, Mulligan v Lackey,* 33 AD2d 991, 992). Furthermore, a supplemental statement is not mentioned in SEQRA or its regulations *(see, Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 429, *supra).* There were no environmental significant modifications made after issuance of the FGEIS in the instant case and so no supplemental statement was required *(see, supra).*

### COMPLIANCE WITH STATE ADMINISTRATIVE PROCEDURE ACT

■ As Supreme Court noted, State Administrative Proce-

dure Act § 202 (8) only requires "substantial compliance" with the procedural rule-making provisions of State Administrative Procedure Act article 2. Although DEC could have employed more precise language in its notice of proposed rulemaking, the notice substantially complied with State Administrative Procedure Act § 202 (1). DEC's notice described in some detail the methodologies which were to be used in calculating the ambient water quality standards for the 95 regulated substances.

State Administrative Procedure Act § 202 (1) (f) (v) requires the notice of proposed rulemaking to include a RIS. The purpose of a RIS is to analyze, *inter alia,* the economic burdens placed upon the regulated community resulting from the proposed action *(see,* State Administrative Procedure Act § 202-a [1]). Here, 90 of 95 regulated substances were already listed in TOGS. The amendments did not impose stricter standards for those 90 substances than did TOGS. For five regulated substances (ammonia, cadmium, copper, zinc and cyanide), the amendments replaced existing TOGS criteria with more stringent ambient water quality standards. DEC interpreted State Administrative Procedure Act § 202-a to require a RIS only so far as the proposed action would require expenses above those previously imposed. Thus, in the RIS, DEC addressed only the five regulated substances which were the subject of more stringent and, hence, more expensive regulation.

Supreme Court properly found that DEC's interpretation of State Administrative Procedure Act § 202-a was neither arbitrary nor capricious. DEC's interpretation was neither irrational nor unreasonable *(see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459). It was appropriate to limit the term "economic impact" to *additional* expenditures required by the new regulations.

Petitioners' argument that DEC failed to submit an adequate RFA in violation of State Administrative Procedure Act §§ 202 (1) (f) (vi) and 202-b is not properly before this court since it was not raised in the petition *(see, Matter of Arbor Oaks Civic Assn. v Zoning Bd.,* 112 AD2d 988, 989, *lv denied* 66 NY2d 604). At any rate, this claim is based on the wrong premise. The RFA is contained in the notice of proposed rulemaking and clearly complies with State Administrative Procedure Act § 202-b (2).

■ Petitioners' next contention, that by "withholding" the fact sheets DEC prevented the public from offering meaningful comment on the amendments (see, State Administrative Procedure Act § 202 [1] [a]), was also properly rejected by Supreme Court. "In the context of an administrative proceeding, a party * * * is entitled to procedures [insuring] * * * 'that they are given a meaningful opportunity to present their case' " (Matter of 1133 Ave. of Ams. Corp. v Public Serv. Commn., 62 AD2d 787, 788, quoting Mathews v Eldridge, 424 US 319, 348-349). The public here was afforded such an opportunity. It had access to every fact sheet for at least 30 days before the close of the comment period.

Finally, petitioners' claim that DEC should have resubmitted the "changed" standards for additional notice and comment due to differences between DEC's originally proposed standards and several of the fact sheets, was also properly rejected by Supreme Court (see, American Iron & Steel Inst. v Environmental Protection Agency, 568 F2d 284, 293). The revisions contained in the fact sheets appear to be "logical outgrowths" of the original proposals. Moreover, DEC withdrew from the amendments any regulated substance, and its numerical standard, for which the originally proposed standard varied by approximately 20% from its fact sheet. To the extent, if any, that the fact sheet changes rendered DEC's original notice incomplete or misleading, DEC's withdrawal of substances outside the 20% change margins eliminated the possibility of substantial prejudice; consequently, renotice was unnecessary (see, Matter of Summerson v Barber, 93 AD2d 652, 655-656, lv denied 60 NY2d 555).

### VIOLATION OF THE ENVIRONMENTAL CONSERVATION LAW

■ Supreme Court also properly dismissed petitioners' claim that DEC violated the sections of the Environmental Conservation Law which require proper study in the adoption and maintenance of reasonable water purity standards. Supreme Court correctly concluded that the absence of a methodology does not render the adoption of standards, which will be unenforceable because of the lack of an accepted test for compliance, arbitrary and capricious. Rather, it merely creates an enforcement problem for DEC. Since DEC is not attempting to enforce the standards at this time, Supreme Court properly ruled that the objection was not ripe for review. By the time DEC is presented with a question of compliance, an approved methodology may be in place.

Finally, petitioners' contention that DEC adopted the amendments without "proper study" in violation of ECL 17-0301, is without merit. It was petitioners' burden to come forward with such proof and they failed to do so *(see, Town of Hempstead v Flacke,* 82 AD2d 183, 187).

We have considered petitioners' other allegations of error and find them unpersuasive.

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Judgment affirmed, without costs.