Hancock, Jr., J.
(dissenting). A county resident may not bring a challenge on environmental grounds to a county local law which produces undifferentiated area-wide environmental effects unless it can show that it suffers a "special injury” which is different in kind or degree from that suffered by the community at large; thus, an assertion of environmental harm potentially available to every resident is insufficient to confer standing (majority opn, at 778). This is the new rule the majority has established in holding that Lawrence Wittman & Co., a Suffolk County (County) resident and employer,[1] lacks standing to contest the validity of the Suffolk County Plastics Law upon the ground that that law was passed in violation of SEQRA. As the majority applies it in this case to dismiss plaintiff Wittman’s complaint, the standing rule establishes criteria so restrictive as to present a virtual bar to SEQRA challenges to legislative actions having such area-wide environmental effects.
The majority suggests (majority opn, at 779) that this standing rule is not to be universally applied and that there may be circumstances where a resident would be permitted to contest "actions that apply indiscriminately to everyone” (id., at 781). If this is so, the opinion offers no coherent reason for why the rule should be invoked in these circumstances when it might not be invoked in other circumstances. Because it provides no satisfactory directions for when the rule should be applied, the majority writing, in my view, invites ad hoc and unguided implementation by the lower courts. However it may be construed, the court’s holding in dismissing this lawsuit imposes substantially heightened standing requirements for *782 SEQRA challenges to area-wide legislation. Such requirements are contrary to the spirit and purpose of SEQRA and, in my opinion, to the generally liberalized standing rules for challenging governmental action which our Court has adopted in recent years. For these and other reasons to be explained more fully, I respectfully dissent and vote to affirm.
I
There must be no confusion on one fundamental point. What is challenged in this lawsuit is the validity of legislation, the Plastics Law — a local law passed by the Suffolk County Legislature and having effect throughout the County. This local law is the "action” which assertedly will have a significant effect on the environment mandating the preparation of an EIS by the County (see, ECL 8-0109 [2]).[2] And it is this local law which plaintiffs seek to nullify because the dictates of SEQRA were not complied with.
The Plastics Law — the testimony before the Legislature showed — could have several serious environmental consequences including an increase rather than a decrease in the volume and weight of solid waste produced in the County and a consequent need for more rather than fewer landfills, an increase in the number of trucks required to traverse County roads to transport this additional solid waste, an increase in the amount of atmospheric pollutants and water-borne waste produced in the County, and an increase in the leachate of chemicals such as dioxins and PCBs from the disintegration of the required biodegradable bags and containers with the resultant risk of seepage into the Magothy aquifer, Long Island’s sole source of drinking water.
Plaintiffs were by no means the only parties presenting testimony raising major environmental questions concerning the proposed Plastics Law. For example, the testimony of The Long Island Association Environment Committee included this:
"Clearly, the intent is that these non-biodegradable plastics would be replaced by biodegradable paper products which would then be recycled, thus lessening the amount of materials which go into the municipal landfill. The ironic nature of this *783 scenario is that recyclers do not want to have anything to do with paper which has been in contact with food or humans, such as would be the case with straws, cups or wrappings. Due to environmental concerns, recyclers only want 'clean’ paper, which is either office paper or newspapers. Thus, the possibility exists that if these new paper wrappings cannot be recycled, as we all hope they could be, they will then have to find their place in the landfills of Long Island. Unfortunately, being a biodegradable product, the paper wrappings would slowly disintegrate, which unfortunately releases all of its chemicals into the landfill, causing a leachate run-off and contaminating the landfill and other nearby areas. The non-biodegradable plastic wrapping which it is replacing does not disintegrate, thus allowing no chemicals to be released into the landfill at anytime.” (Record on appeal, at 778-779.)
Let there be no mistake. These are not matters of merely localized concern to a few specific areas but matters presenting environmental problems of substantial concern to the entire County. Yet, the County Legislature, in effect, ignored these problems in issuing what was unquestionably a groundless negative declaration.[3]
Plaintiffs cited these important County-wide environmental problems in their successful efforts in the lower courts to set aside the Legislature’s action because of its disregard of SEQRA’s protective mandates. Supreme Court found that the County had failed to take the required "hard look” before deciding to dispense with an EIS and issuing its negative declaration. That court noted that "almost all of the testimony adduced at the hearing held by the Legislature indi *784 cated that the proposed law would have some significant environmental * * * effects”. And it specifically detailed the facts supporting its conclusion that the County ignored SEQRA in issuing the negative declaration, including (1) that the environmental assessment form (EAF) "was prepared in a rushed, haphazard manner over a period of time of only a few days without taking into account available evidence adduced at the hearings held by the Suffolk County Legislature”, (2) that the EAF "was prepared by a partisan proponent of the proposed law who carefully deleted critical portions of the EAF originally drafted by a County planner”, (3) that this altered EAF was considered by the County Council on Environmental Quality (CEQ) for, at most, a few hours before it recommended that a negative declaration be issued and (4) that no evidence existed in the record that any CEQ member (other than the bill’s proponent) was present at the public hearings (Society of Plastics Indus. v County of Suffolk, Sup Ct, Suffolk County, May 24, 1989, Cannavo, J., at 14-19). As Justice Cannavo noted, the County planner’s draft EAF indicated that "the liquid wastes, toxic chemicals, and atmospheric emissions generated as a result of the * * * Plastics Law were unknown, and the effects on both surface and groundwater were unknown” (opn by Cannavo, J., at 4 [emphasis added]). But by "whiting out” and "inking over” these portions of the planner’s draft EAF, the bill’s partisan proponent submitted an EAF which concluded that "no liquid industrial wastes or toxic chemicals would be emitted” (id., at 5 [emphasis added]).
In its unanimous agreement with Supreme Court’s conclusion that the County failed to take the required "hard look”, the Appellate Division adverted to "the broad range of potential environmental harms which the plaintiffs asserted would result from the implementation of the Plastics Law” (154 AD2d 179, 182). Today, however, the majority reverses the lower courts and reinstates this unfounded negative declaration. It does so not because of any disagreement with the lower courts on the merits of the issue of SEQRA compliance. Instead, the majority reverses because it concludes that plaintiffs have not shown that they are proper parties to maintain this SEQRA challenge. In short, the majority says, plaintiffs *785 lack standing and should never have been permitted to take the case to court.[4] It is with this holding that I take issue.
II
In New York courts the now-established test for standing in cases of SEQRA challenges is the liberal two-part test that has been adopted as the general rule for standing in other contexts (see, Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 6). Under this accepted rule, all that an objector "needs to 'show [is] that the [challenged] action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.’ ([Matter of Dairylea, supra], at 9.)” (Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433 [Wachtler, Ch. J.]; see, e.g., Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 529; Matter of Industrial Liaison Comm. v Williams, 131 AD2d 205, 209, affd 72 NY2d 137; Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 341, affd 56 NY2d 859.) If this existing rule were applied, plaintiffs, without a doubt, would be within the zone of interest to be protected and thus have standing. So the lower courts have held in this case (see, Society of Plastics Indus. v County of Suffolk, 154 AD2d 179, supra). After all, plaintiffs, like the other residents of Suffolk County, would certainly be affected by an increase in leachate seeping into the aquifer, the greater intensity of air pollution, more trucks hauling garbage and solid wastes on County highways and an over-all increase in the weight and volume of solid wastes produced in the County.
The majority, nevertheless, dismisses plaintiffs’ suit for lack of standing by adopting a new standing rule, one that is far more restrictive than has heretofore been employed by our *786 courts in SEQRA challenges or other contexts. Under this rule, as the majority explains it: "this plaintiff — having failed to allege any threat of cognizable injury it would suffer, different in kind or degree from the public at large — lacks standing to maintain this SEQRA challenge.” (Majority opn, at 778.)
Under the new standard, someone who alleges environmental damage from an action which applies generally to an entire area and indiscriminately affects everyone in the area is precluded from judicial review. Because such environmental damage is by its very nature undifferentiated and shared by all, the objector cannot show special damage that is different from that of the public at large. The rule, as it is employed here, can thus present a virtual impasse to judicial review.
The majority’s imposition of this extra standing requirement marks a decided change in the course of the Court’s carefully developed jurisprudence in interpreting and implementing SEQRA since its enactment 15 years ago. It denotes an apparent lessening in what has been recognized as this Court’s "powerful commitment to the goal of SEQRA” (Weinberg, 1988 Practice Commentaries, McKinney’s Cons Laws of NY, Book 17 1/2, ECL C8-0109:4, 1991 Cum Ann Pocket Part, at 27).[5] As I believe will be demonstrated, the majority’s rationale for it does not withstand critical analysis. Moreover, because it can operate to shield cases of clearly insufficient SEQRA compliance from judicial review — as it does here — the new "special damage” rule does not serve the public interest *787 or further the important policies embraced by the Legislature in its enactment of SEQRA.
Finally, the majority’s decision to erect this additional barrier to standing is at odds with the more open-handed approach to standing assumed by New York courts in recent years and our recognition that the "fundamental tenet of our system of remedies is that when a government agency seeks to act in a manner adversely affecting a party, judicial review of that action may be had (see Jaffe, Judicial Control of Administrative Action, p 336; Davis, Unreviewable Administrative Action, 15 FRD 411).” (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 10, supra; see, id., at 9-12.)
Ill
Our New York courts have without hesitation employed in SEQRA challenges the liberal two-part test that has been adopted as the general rule for standing in other contexts (see, Matter of Dairylea Coop. v Walkley, supra, at 9; Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 6, supra; see, Madden, Case Law Developments Under New York’s State Environmental Quality Review Act, 56 NYS BJ 16, 17 [Apr. 1984]).[6] Consistent with "the broadening rules of standing in related fields” (Matter of Douglaston Civic Assn. v Galvin, supra, at 6), in SEQRA cases our courts have consistently held that the fact that a party may have economic reasons for its challenge will not defeat its standing so long as it alleges that it will suffer an environmental injury (see, e.g., Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, supra, at 433; Matter of Niagara Recycling v Town Bd., supra, at 341; Webster Assocs. v Town of Webster, 112 Misc 2d 396, 402, affd 85 AD2d 882, revd on other grounds 59 NY2d 220; Bliek v Town of Webster, 104 Misc 2d 852, 858-859).
The sine qua non of SEQRA standing under our in-fact injury and "zone of interest” rule is that the objector must allege some environmental harm. It is obvious that the rule operates differently in cases of localized, site-specific actions *788 such as a proposed office complex or sports stadium than in cases where the action has a generalized application over a wide area as do many local laws. When the proposal in question is geographically centered — e.g., construction of a shopping center (see, Matter of Mobil Oil Co. v Syracuse Indus. Dev. Agency, supra) or a zone change (see, Matter of Har Enters. v Town of Brookhaven, supra) — the adverse effect, if any, is not dispersed. It is not felt indiscriminately by all residents in the County. The intensity of the environmental impact obviously depends on proximity to the site of the action and varies inversely with the distance from it. Because any resident of the larger community, even one situated miles from a proposed localized action, could allege, at least in theory, an anticipated environmental injury from such localized action, some realistic fixing of the outer limits in determining who has suffered injury in fact is essential. Thus, in cases of this type, it is entirely logical and reasonable to require that a party make some showing of “special damage, different in kind and degree from the community [at large]” (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 413 [cited in Matter of Har Enters. v Town of Brookhaven, 74 NY2d, at 528, supra]) as a condition for establishing standing to bring a SEQRA challenge.
By contrast, where the challenged action is not geographically centered but is one which has general application over a wide area — such as a local law which may have an effect throughout a town or a county — the impact of that action is not localized, but diffuse. The adverse environmental consequence, if any, is borne alike by the residents of the geographical area in which the local law applies. Since the effect on the residents is general and undifferentiated, it would be anomalous to require that a particular resident demonstrate special harm that is differentiated in nature or degree from the harm suffered by any other resident. Yet, this is just the requirement that the majority rule imposes on plaintiffs here.
What the majority has done is add the “special harm” requirement for standing in the site-specific cases to the requirement for standing which would, under the usual rule, be applied in the nonsite specific general harm cases. Clearly, where the extent of the environmental injury diminishes with increased distance from the proposed action, the “special harm” requirement makes sense and works. Where, however, the alleged injury is essentially the same over a wide area, the rule does not work. For if a resident’s environmental damage *789 is essentially the same as that of the neighbors, the resident can hardly show injury "different in kind or degree from the public at large” (majority opn, at 778).
A simple hypothetical may put the question in focus. Suppose a town passes a local law permitting all of the residents to throw their garbage in the streets. Everyone in the town could allege environmental harm from the deleterious consequences but the same harm would be shared by all. Would no one have standing to challenge the town’s SEQRA compliance? Under the majority’s standing rule, it seems so. A question comes immediately to mind. Would the SEQRA challenges have been dismissed on standing grounds if the new rule had been applied in Matter of Industrial Liaison Comm. v Williams (supra [SEQRA challenge to State-wide promulgation of water quality regulations by Department of Environmental Conservation (DEC)]) or in Matter of Save the Pine Bush v City of Albany (70 NY2d 193 [challenge to proposed zone changes because of potential environmental effect on Albany’s pine barrens]) or in Matter of Niagara Recycling v Town Bd. (supra [challenge to local law for licensing and regulating solid and industrial waste facilities within the town])?
Moreover, the application of a strict "special harm” rule in this context[7] is certainly novel. As the Court has noted, the "special harm” rule is simply an "injury in-fact” rule applied in situations where the objector is not directly a party to the challenged action (see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, supra, at 433, quoting Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra, at 413). Where the challenged action directly involves the objector’s own land (see, Matter of Har Enters. v Town of Brookhaven, 74 NY2d, at 528, supra) or the property of an adjoining landowner (see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra), the law presumes injury in fact without the necessity of demonstrating special damage. The case law demonstrates *790 how the "special harm” rule can be applied to permit a person to be considered aggrieved by an action to which it was not a party (see, Matter of Douglaston Civic Assn. v Galvin, supra) and to permit a member of the public to enforce zoning laws against another person (Little Joseph Realty v Town of Babylon, 41 NY2d 738, 741-742; Cord Meyer Dev. Co. v Bell Bay Drugs, 20 NY2d 211, 216-217).
Never before has a party directly affected by challenged action been required to demonstrate "special harm” different in kind from the "public in general” (see, Matter of Niagara Recycling v Town Bd., supra, at 341 [owners of commercial facilities located in town have standing to challenge local law regulating the siting and operation of waste disposal and management facilities]; Matter of Industrial Liaison Comm. v Williams, 131 AD2d 205, affd 72 NY2d 137, supra [association of industrial dischargers has standing to challenge DEC’s promulgation of ambient water quality standards on SEQRA grounds]). Here, plaintiffs have brought a SEQRA challenge seeking to invalidate a local law which directly applies to them as residents of the County. They have alleged in-fact injuries and their claimed injuries are environmental — falling within the zone-of-interests of SEQRA. Nothing more, to date, has ever been required to establish standing. Nothing more should be required.[8]
IV
The reasons the majority advances to support its restrictive rule do not help its argument. First, the majority cites the Legislature’s repeated rejection of a "citizen’s suits” bill which, in effect, would have abolished standing as a requirement by permitting any person to bring an action on environmental grounds "whether that person was aggrieved or not” (majority opn, at 770). It is unclear why the Legislature’s *791 refusal to do away with any standing requirement for SEQRA challenges somehow suggests that it would favor the stringent standing rule the majority has adopted here (id., at 770-771).
Second, the majority suggests that — despite such obvious area-wide concerns as seepage of leachate into the aquifer, increased air pollution and greater volume and weight of solid waste — the case really involves mainly localized environmental problems relating to the specific sites of the County’s 12 landfills (majority opn, at 778-779, and n 2). On this assumption, it seems to suggest that the case should come within the site-specific decisions where the environmental effect obviously depends on distance from the action and the "special injury” requirement is relevant.
But nothing in the record supports the majority’s assumption. The Plastics Law is not simply a regulation of landfills (majority opn, at 778-779).[9] The Plastics Law establishes a set of comprehensive regulations for all of the residents of Suffolk County which assertedly will produce, as the Appellate Division noted, a "broad range of potential environmental harms” (154 AD2d, at 182). The prospects of contamination of the County’s drinking water, increased air pollution and a greater production of solid waste certainly pose the threat of serious environmental harm to every resident. It is not clear whether the majority would grant SEQRA standing based, for example, on the threat of pollution to the Magothy aquifer to someone living near a landfill and deny standing for someone having the same complaint but living some distance away. If this is its position, the majority does not explain why this should be so.
Finally — although the relevance is far from clear — the majority opinion alludes to "misus[e of] the statute to delay or defeat governmental action and thereby advance ends outside the legislative purview” (majority opn, at 778) and stresses the danger of allowing challenges by "pressure groups, motivated *792 by economic self-interests, to misuse SEQRA for such purposes” (id., at 774; see also, reference to SEQRA challenges "made by pressure groups seeking to delay or defeat action in order to further their own economic interests”, id., at 779; and see, quoted language from Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, majority opn, at 779). If there is some unintended implication from these comments that plaintiffs have not proceeded in good faith, the record must be set straight. There is no evidence of plaintiffs’ lack of good faith. No such charge is made. Indeed, plaintiff Wittman & Co. does not produce any of the banned plastic products and alleges no economic injury resulting from the challenged law. It alleges only environmental harm.
The majority also depicts plaintiffs as "for-profit member corporations [engaged] in the business of making and selling plastics products, entities whose economic interests are not served by bans on plastics products.” (Majority opn, at 776.) Again, the relevance is not apparent. The issue here is whether plaintiffs have alleged an environmental injury that brings them within the zone of interest to be protected (see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, supra, at 433). Irrespective of whether the law’s challengers might be plastics manufacturers or basket weavers, they could be affected in the same way by the area-wide environmental harm which will allegedly result from the Plastics Law. Of course, it does not matter for standing purposes that plaintiffs may also suffer economic injuries in addition to environmental harm. This is well settled (see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, supra, at 433, and cases there cited).
V
There remains the question: what is the precise rule under which the majority has dismissed on standing grounds plaintiffs’ substantial claims of environmental harm resulting from an action pertaining to the entire County? Is the rule that for persons to have SEQRA standing they must invariably show special damage that is "different in kind or degree from the public at large” (majority opn, at 778) even if, as I submit is true here, the damage complained of is countywide and undifferentiated? If that is the rule, it poses a logical paradox. A person’s environmental injury cannot be both the same as that of the neighbors and yet different from that of the *793 community at large. In the hypothetical case of the local law permitting residents to throw garbage in the streets, no one could have standing for everyone would have essentially the same complaint.
Does the majority’s "special injury” rule operate differently — as the majority suggests it might (majority opn, at 779)— when the environmental harm suffered by a resident is not 100% general and diffused but consists in some part of harm that is site-specific and localized? If this is so, the question is why, if residents have entirely legitimate claims of general and diffused harm from an area-wide action, should they be barred from bringing a lawsuit because there may be other incidental localized effects from which they cannot show special injury?
Does the application of the rule depend in some way on the identity of the objector rather than on whether the injury objected to is within the zone of interest? Scattered comments in the majority writing (e.g., referring to plaintiffs as "for-profit member corporations in the business of making and selling plastics products” [majority opn, at 776] and to "pressure groups seeking to delay or defeat action in order to further their own economic interests” [id., at 779]) suggest that perhaps this is so: that a "pure plaintiff” with no incidental economic interests might have standing even for environmental injury which is not different in kind or degree from the community at large. Again, if such factors are significant, the majority does not explain why access to the courts should be foreclosed to parties which have legitimate environmental claims because they also have economic motives or possess other characteristics which do not affect the nature or degree of their environmental harm.
Satisfactory answers to these questions do not appear, at least for me, and, I suspect, might not appear for the guidance of persons who, like plaintiffs, may have interests which are both economic and environmental. But whatever the precise formulation, the new standing rule will undeniably make review of a municipality’s compliance with SEQRA more difficult. SEQRA was enacted as remedial legislation to further the significant public interest in preserving the environment with the idea that the law’s enforcement would, at least in part, depend on actions brought by interested citizens. Creating an additional standing barrier to such actions undercuts this concept. It also seems contrary to the policy stated in *794 our decisions that the standing requirements should be relaxed, not tightened, to the end that controversies should be decided on the merits (see, Matter of Douglaston Civic Assn. v Galvin, 36 NY2d, at 6, supra; see also, Matter of Dairylea Coop. v Walkley, supra, at 10-11). Ironically, by disposing of this case on standing grounds without addressing the merits, the majority leaves intact a governmental action which may present significant area-wide environmental problems, an action which was taken in blatant disregard of the environmental protections which SEQRA affords.
For the foregoing reasons, I dissent and would affirm the order of the Appellate Division.
Chief Judge Wachtler and Judges Alexander and Bellacosa concur with Judge Kaye; Judge Hancock, Jr., dissents and votes to affirm in a separate opinion in which Judges Simons and Titone concur.
Order reversed, etc.

. Because I believe that Wittman clearly has standing, I find it unnecessary to address the further issue of whether the Society of Plastics has standing (see, infra, at 785, n 4).

. (See, 6 NYCRR 617.2 [b] [3] [definition of "action” specifically includes local laws]; Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 340 [Hancock, Jr., J.], affd 56 NY2d 859.)

. The majority goes to some length to imply that the Plastics Law is environmentally sound (majority opn, at 780), while at the same time emphasizing that the merits of the legislation are irrelevant to its standing analysis (id., at 780). Suffice it to say, that any implication that there are not two tenable sides to the issue is clearly at odds with the Appellate Division’s unanimous agreement with Supreme Court that "the record supports the conclusion that the Plastics Law, once it becomes effective, may have a serious impact on * * * the ecology”. (Emphasis added.) Nowhere does the majority take issue with this conclusion or with the lower courts’ ultimate holding (with which I agree) that the law was passed in outright disregard of SEQRA and that these environmental effects required the preparation of an EIS.

. In its original answer, the County did not raise the issue of plaintiffs’ standing to contest its SEQRA compliance. Supreme Court, however, permitted the County to amend its answer to include this defense and then dismissed the issue noting that plaintiffs "may suffer environmental as well as economic injury if an ill-conceived solid waste disposal plan affects the water supply of Long Island” and holding that plaintiffs Lawrence Wittman & Co., a local business and employer and resident of Copiague, Suffolk County, and the Society of Plastics, which has some Suffolk County residents as members, "alleged environmental injury, and they have standing to challenge the SEQRA determination of the County.” Although the standing question was raised in the Appellate Division, that court summarily disposed of it without comment in its affirmance of Supreme Court.

. This Court’s adherence to the compelling public policies underlying SEQRA (see, Weinberg, 1988 Practice Commentaries, McKinney’s Cons Laws of NY, Book 17 1/2, ECL C8-0109.-4, 1991 Cum Ann Pocket Part, at 27) has been demonstrated repeatedly (see, e.g., Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359 [Court halted construction of high-rise development for noncompliance with SEQRA]; Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41 [Court nullified resolutions pertaining to sewer district because of SEQRA violation]; Weinberg, 1987 Survey of New York Law: Environmental Law, 39 Syracuse L Rev 279, 283-286). The Court has given expression to this commitment in its rule that the mandates of SEQRA require strict or literal compliance (see, Matter of Har Enters. v Town of Brookhaven, 74 NY2d 524, 528-529; Matter of Coca-Cola Bottling Co. v Board of Estimate, 72 NY2d 674, 679-680; Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 206-207; Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 340 [Hancock, Jr., J.], affd 56 NY2d 859; see also, Matter of Rye Town/King Civic Assn. v Town of Rye, 82 AD2d 474, 482, appeal dismissed 56 NY2d 985). This same commitment is reflected in standing decisions involving SEQRA challenges.

. The author writes (56 NYS BJ, at 17): "The New York courts grant broad but not unlimited standing to parties to raise SEQRA issues. New York’s courts generally have a liberal view on standing based upon the 'zone of interest’ test. The courts have almost uniformly found that citizens groups, and potentially effected neighbors have standing to challenge SEQRA determinations of state or local agencies.” (See cases cited id., at 17, n 16.)

. The position of the dissent, of course, is not that New York courts have never before applied a "special harm” requirement to "a SEQRA challenge to administrative action” (majority opn, at 775, n 1) or that the "special harm” rule should be limited only "to zoning laws” (id., at 780). This "special harm” rule has been and should be applied where the action challenged is localized or geographically centered. We maintain that no New York court has ever before applied a "special harm” requirement to a challenge on SEQRA grounds to a local law of area-wide effect by a resident directly affected by that law. The majority has cited no such case.

. The majority states that "the dissent would rewrite this Court’s unanimous decision of barely a year ago, Matter of Mobil Oil Corp.” (majority opn, at 775, n 1). But this is plainly not so. The position of the dissent and the rule it urges here is entirely consistent with Mobil. The simple holding in Mobil was this: "To qualify for standing to raise a SEQRA challenge, a party must demonstrate that it will suffer injury that is environmental and not solely economic in nature [citations omitted] ** * * Mobil has not alleged that it will suffer any specific environmental harm. * * * Mobil therefore lacks standing to challenge the adequacy of SIDA’s review of the Carousel Center project.” (76 NY2d, at 433 [emphasis added].) Here, of course, unlike Mobil Oil Corp., plaintiffs have alleged environmental harm and satisfy the above requirement.

. Indeed, the majority opinion itself earlier describes "[t]he heart of the Plastics Law [a]s section 3, prohibiting retail food establishments in Suffolk County from selling or conveying food * * * 'unless * * * placed * * * in biodegradable packaging’ ” (id., at 766) and notes that the law was directed towards ''encouraging] recycling of solid waste products, providing] enhanced protection of groundwater quality, slowing] down rapid filling of landfill space, simplifying] the chemical composition of solid waste and thereby reducing] the environmental hazards and toxicity associated with solid waste incineration, and reducing] the cumulative impact of litter.” (Id.)