OPINION OF THE COURT
George L. Cobb, J.
Petitioners-plaintiffs (hereinafter petitioners) have commenced a hybrid CPLR article 78 proceeding and action for declaratory judgment seeking a judgment annulling the newly promulgated 6 NYCRR part 218, which in effect, requires that as of 1993 all new motor vehicles sold in the State of New York must comply with stricter California emissions standards. The new regulations are challenged on the grounds that respondents-defendants (hereinafter respondents) had no statutory authority to promulgate such regulations and that they violated the procedures of the State Administrative *407 Procedure Act and of the State Environmental Quality Review Act (ECL art 8) in promulgating the regulations. A fourth cause of action has been discontinued by stipulation.
Petitioners argue that under the holding in Boreali v Axelrod (71 NY2d 1), adoption of the California emissions requirements by the Department of Environmental Conservation constitutes a social policy question of great import and substantial expense which must be addressed by the Legislature rather than an administrative agency. The Court of Appeals in Boreali v Axelrod (supra) held that the presence of four different considerations, none of which standing alone would have been sufficient to defeat administrative action, combined to render the Public Health Council’s smoking regulations invalid for want of authority.
The first ground upon which the Court of Appeals relied was the fact that the Public Health Council had been granted authority to "deal with any matters affecting the * * * public health” (Public Health Law § 225 [5] [a]). However, the challenged regulations consisted predominantly of exceptions to the no smoking rule based upon economic and social concerns. The court found an absence of authority to make decisions based upon "cost-benefit” considerations and found no legislative guidelines for such balancing. In contrast, the Environmental Conservation Law has explicitly set forth guidelines for such balancing and requires the Department of Environmental Conservation to make such cost-benefit considerations. ECL 1-0101 (3) declares it to be the State policy "to foster, promote, create and maintain conditions under which man and nature can thrive in harmony with each other, and achieve social, economic and technological progress for present and future generations”. The Department and the Commissioner are granted the power and duty to carry out such environmental policy (ECL 3-0301 [1]). In addition, ECL 19-0103 states that it is the declared policy of the State to require balancing of the public health and welfare, industrial development, propagation and protection of flora and fauna, and the protection of personal property and other resources. Respondents’ program concerning air pollution control is required to be consistent with such policy (ECL 19-0105).
The second consideration involved in Boreali v Axelrod (supra) is that the regulations did not fill in details of broad legislation describing over-all policies to be implemented. As already indicated, the Environmental Conservation Law clearly describes the over-all policies to be implemented and *408 specifically authorizes the Department of Environmental Conservation to fill in the details with respect to regulation of motor vehicle exhaust emissions. ECL 3-0301 (2) (n) provides that the Department and Commissioner are authorized to "study, monitor, control and regulate pollution from motor vehicle exhaust emissions”. ECL 19-0301 (1) (b) authorizes the Department and Commissioner to promulgate regulations which include "the extent to which air contaminants may be emitted to the air by any air contamination source”. An air contamination source is defined in ECL 19-0107 (5) to include motor vehicles. Moreover, the Department and Commissioner are specifically authorized to promulgate standards for in-use emissions (ECL 19-0301 [1] [c]; 19-0305 [2] [k]). The ability to set standards for in-use emissions obviously includes the authority to set standards for new automobiles held for sale in the State of New York which will become in-use emissions sources immediately upon sale.
The Court of Appeals in Boreali v Axelrod (supra) also found legislative inaction on a grand scale entailing years of debate and numerous failed bills. The Court of Appeals, however, cautioned that such consideration ordinarily was insufficient to determine legislative intent. In the instant case, there was but one bill which was not passed by the Legislature. Such bill’s procedural history is thus of little moment in determining whether respondents were authorized to promulgate the instant regulations.
Finally, the Court of Appeals found that no special health expertise was necessary to promulgate the challenged no smoking regulations. In contrast, with respect to air pollution, "[t]he technical nature of the subject * * * makes delegation to the Department to set detailed standards by regulation particularly apt” (Weinberg, Practice Commentary, McKinney’s Cons Law of NY, Book 1710, ECL 19-0301, at 150).
It is therefore determined that respondent Commissioner was expressly authorized to promulgate extensive regulations limiting exhaust emissions from motor vehicles including adoption of California certification standards.
Petitioners also contend that respondents violated subdivision (4-a) of section 202 of the State Administrative Procedure Act by failing to publish a notice of revised rule making or take other required steps based upon alleged substantial revisions in the text of the rule as proposed when compared with the rule as adopted. The great majority of the changes *409 asserted by petitioners were, in fact, requested by petitioners and actually lessen restrictions on sales and the burdens of complying with the administrative requirements. These revisions include 6 NYCRR 218-4.6 (b); 218-4.8, 218-4.5 (b); 218-7.5 (not adopted), 218-7.8 and 218-7.9. As such, petitioners are not in any way harmed by the changes. To the extent that the effective date provided by 6 NYCRR 218-1.1 was changed, rather than merely clarified, the time for compliance was extended. As such, petitioners were not harmed by any change. Petitioners are also not involved in casual sales of automobiles or importation of automobiles by individuals changing residence. As such, they are not harmed by the changes to 6 NYCRR 218-2.1 (b) (2) or 218-3.1 (c). Petitioners, therefore, have no standing to challenge such changes (Matter of Dairy lea Coop. v Walkley, 38 NY2d 6).
Subdivision (9) of section 102 of the State Administrative Procedure Act defines a substantial revision as any addition, deletion or other change in the text which materially alters its purpose, meaning or effect. The purpose of the requirement for notice of revised rule making is obviously to provide the public with notice so that they may comment upon proposed changes. It is not to increase administrative expense or delay administrative action by requiring administrative agencies to start anew each time minor changes in regulations are made as a result of the outcome of public hearings and comments. The Federal courts have phrased the test as whether the final rule is a "logical outgrowth” of the proposed rule, or if the notice provided would " 'fairly apprise interested persons of the "subjects and issues” ’ ” (Small Refiner Lead Phase-Down Task Force v United States Envtl. Protection Agency, 705 F2d 506, 547).
Thus, in determining whether a revision is substantial or not, the court must look at the revision within the context of the entire proposed regulation. Revisions to extensive technical regulations which might be deemed substantial within the context of a short regulation of limited scope may be found to have no significant impact on the purpose, meaning or effect of such larger regulation. Moreover, the court should consider whether the notice of proposed rule making already published for the initial proposed regulations would require any changes to cover the revisions. The notice of proposed rule making published in the New York State Register with respect to new part 218 contained a description of the subject, purpose and substance of the rule based upon the fact that the rule far *410 exceeded 2,000 words (State Administrative Procedure Act § 202 [4-a] [b] [ii]). With respect to 6 NYCRR 218-5.6 and 218-5.8, the notice of proposed rule making merely provided general descriptions of the substance of the sections. The renotice would not be in any way different for the rules as promulgated. Moreover, the rules as promulgated merely included revisions to effectuate complete equivalence with California regulations as required by Federal law and as requested by petitioners. Accordingly, it is determined that the modifications to 6 NYCRR 218-5.6 and 218-5.8 were not substantial.
The regulations as promulgated added 6 NYCRR 218-7.2 (d) which authorized the Department of Environmental Conservation to enter and inspect dealers’ premises within the context of part 218. Such change, which is explicitly authorized by ECL 3-0301 (2) (g), merely served to provide affected dealers with notice of the statutory authority. The revision therefore did not alter the purpose, meaning or effect of part 218. Accordingly, it is determined that respondents substantially complied with the provisions of the State Administrative Procedure Act (see, § 202 [8]).
Petitioners also contend that respondents failed to comply with the State Environmental Quality Review Act (SEQRA) by failing to require an environmental impact statement on the grounds that the California certification regulations, although designed to reduce ozone and carbon monoxide pollution levels, may actually enhance such levels. Petitioners allege in a conclusory fashion that the new regulations will have negative environmental impacts and that as landowners with presences in this State, they will suffer actual injury. Such conclusory, speculative allegations of environmental injury have been held sufficient to sustain standing (Matter of Industrial Liaison Comm. v Williams, 131 AD2d 205, affd 72 NY2d 137). As owners of real property in this State, petitioners will be subjected to the effects of air pollution including increased rates of degradation of buildings and structures and the killing of landscaping and other plantings. Moreover, the regulations involved herein have a truly State-wide impact which is entirely indiscriminate in effect and which will affect air quality in every portion of the State in which cars are driven. As such, the requirement that petitioners show injury different from that sustained by members of the general public is inapplicable (cf., Society of Plastics Indus. v County of Suffolk, 77 NY2d 761). Accordingly, it is determined that *411 petitioners have standing to challenge respondents’ SEQRA determination to issue a negative declaration.
In promulgating the regulations, the Department of Environmental Conservation was required to identify all significant environmental issues, take a "hard look” at such issues and make a "reasoned elaboration” of the basis for the determination. The threshold for requiring the preparation of an environmental impact statement rather than issuing a negative declaration is very low. Any indication that the action may have a significant effect on the environment requires preparation of an environmental impact statement (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359, 363). However, the environmental impact statement is only required where "specific, significant environmental impacts * * * can be reasonably anticipated” (Aldrich v Pattison, 107 AD2d 258, 266). Respondent Commissioner engaged the resources of an independent consulting firm to assess the expected results of requiring California certified motor vehicles in New York State. In addition, the Commissioner relied upon the very substantial technical expertise of the employees of the Department of Environmental Conservation together with past experiences of decades of heightened emissions controls by the State of California. Based upon such facts, the Commissioner made a specific finding determining that the use of California-certified cars in the State of New York would not increase or enhance the levels of any air contaminants and would not lead to increased fuel use. Such determination clearly has a rational factual basis in the record and has not been shown to be arbitrary or capricious or in any way incorrect.
Accordingly, it is determined that respondent Commissioner in fact took the required hard look at the environmental issues and provided a reasoned elaboration of the basis for the negative declaration. Respondents therefore in all respects complied with the provisions of the State Environmental Quality Review Act. Since petitioners have failed to show any ground requiring annulment of 6 NYCRR part 218, the article 78 proceeding shall be dismissed and it shall be adjudged and declared that respondent Jorling had authority to promulgate the regulation and that said respondent promulgated the regulations in compliance with the provisions of the State *412 Administrative Procedure Act and the State Environmental Quality Review Act. There being no basis for including the State Environmental Board as a respondent-defendant, the action shall be dismissed against said respondent in all respects.