OPINION OF THE COURT
John T. Buckley, J.
The dispute animating this litigation between publicly minded citizens and public officials substantively involves the proposed sale and transfer of a 60-year-old municipal water system to a regional authority. This litigation necessarily implicates fundamental questions of public decision making and official accountability.
Defendants have moved to dismiss the amended verified complaint of plaintiffs in this action for declaratory and injunctive relief based upon causes of action arising under Second Class Cities Law § 22, General Municipal Law § 51, article IX (§ 1 [h]) of the New York Constitution, and ECL 8-0109 (State Environmental Quality Review Act [SEQRA]). Plaintiffs allege that various acts undertaken, performed, approved or ratified by various combinations of defendants in connection with a planned transfer of Utica’s water system to a regional water *109 authority constitute a waste of municipal assets, require referenda, and require SEQRA review. Defendants seek dismissal claiming that plaintiffs have failed to state any cause of action.
Plaintiffs have interposed four causes of action in a 28-page, 168-paragraph amended verified complaint. Defendants have identified what they claim are fatal defects as to parties, standing and causes of action.
Whether plaintiffs have claims which can be litigated as a declaratory judgment action would appear to be a threshold question of some moment since, inter alia, the challenges mounted to official action are claims which must typically be brought pursuant to CPLR article 78 and the specific determinations rendered by the municipal corporation defendants happened more than four months prior to commencement of this action. (DiMiero v Livingston-Steuben-Wyoming County Bd. of Coop. Educ. Servs., 199 AD2d 875, 877 [3d Dept 1993], lv denied 83 NY2d 756 [1994]; Matter of Young v Board of Trustees, 221 AD2d 975 [4th Dept 1995]; Clempner v Town of Southold, 154 AD2d 421, 423 [2d Dept 1989].) Prospective actions of those defendants from which plaintiffs seek the equitable protection of this court may not be sufficiently definite to be considered ripe for adjudication. (Hunt Bros. v Glennon, 81 NY2d 906, 910 [1993].) While the court perceives plaintiffs’ action as an article 78 proceeding, whether that is so and the consequences flowing from such classification have not been briefed. The court will only deal with the legal sufficiency of plaintiffs’ pleading with respect to the four causes of action. The court will not directly address issues of parties, Statute of Limitations or ripeness. The court will also not consider whether plaintiffs have posted a sufficient bond to pursue an action under General Municipal Law § 51.
On this motion to dismiss for failure to state a cause of action, the court will take plaintiffs’ factual allegations as true. (Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 . NY2d 428, 432 [1990].) "At this stage, of course, the pleadings are to be liberally construed and the complaint must stand if any valid cause of action is stated.” (Murphy v Erie County, 34 AD2d 295, 298 [4th Dept 1970], affd 28 NY2d 80 [1971].) Factual allegations must be carefully distinguished from conclusory statements or rhetorical devices, neither of which are assumed to be true for purposes of this motion. (Kittinger v Buffalo Traction Co., 160 NY 377, 387 [1899].)
Plaintiffs Montecalvo and Convertino claim standing as residents, water rate payers, voters, property owners and *110 taxpayers in the City of Utica to seek relief based upon two separate but closely related State statutes which create causes of action when waste can be alleged and proven. Second Class Cities Law § 22 provides: "The common council and the several members thereof, and all officers and employees of the city are hereby declared trustees of the property, funds and effects of said city respectively, so far as such property, funds and effects are or may be committed to their management or control, and every taxpayer residing in said city is hereby declared to be a cestui que trust in respect to the said property, funds and effects respectively; and any co-trustee or any cestui que trust shall be entitled as against said trustees and in regard to said property, funds and effects to all the rules, remedies and privileges provided by law for any co-trustee or cestui que trust; to prosecute and maintain an action to prevent waste and injury to any property, funds and estate held in trust; and such trustees are hereby made subject to all the duties and responsibilities imposed by law on trustees, and such duties and responsibilities may be enforced by the city or by any co-trustee or cestui que trust aforesaid. The remedies herein provided shall be in addition to those now provided by law.”
A cause of action based upon this statute, derived from an 1872 enactment which was a legislative reaction to notorious municipal corruption in New York City, requires allegations of fraud, collusion, corruption or bad faith since "[a]ny other construction would subject the discretionary action of all local officers and municipal bodies to review by the courts at the suit of the taxpayers, a result which would burden the courts with litigation, without increasing the efficiency of local administration.” (Talcott v City of Buffalo, 125 NY 280, 288 [1891].) Plaintiffs also plead a cause of action based upon General Municipal Law § 51 which, in material part, provides: "All officers, agents, commissioners and other persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation by any person”.
These fraternal-twin causes of action share a common genesis and perform a similar function of affording taxpayers a mechanism for controlling official misconduct which has *111 produced or will produce waste of municipal assets. These statutes confer private Attorney-General status upon taxpayers and, precisely because of their historical origin and their potential threat to republican government if such private litigation were unbridled, special allegations of waste tied to corruption have been required. (Gaynor v Rockerfeller, 15 NY2d 120, 133 [1965]; Kaskel v Impellitteri, 306 NY 73, 79 [1953]; Western N. Y. Water Co. v City of Buffalo, 242 NY 202, 206 [1926]; Altschul v Ludwig, 216 NY 459, 464 [1916].) Courts must be especially vigilant, in this context, in inquiring whether a dispute between private citizens and public officials essentially involves a power distributed to another branch of government, regardless of the apparent wisdom of the challenged public policy, since "[t]here is room for much bad legislation and misgovernment within the pale of the constitution; but whenever this happens, the remedy which the constitution provides, by the opportunity for frequent renewals of the legislative bodies is far more efficacious than any which can be afforded by the judiciary.” (People ex rel. Wood v Draper, 15 NY 532, 545 [1857], cited in Kittinger v Buffalo Traction Co., 160 NY 377, 388-389 [1899], supra.) Consistent judicial construction during the past century of these statutes has stressed judicial restraint. While there must be specific allegations of waste tied to official corruption, it is also clear that allegations of illegality alone are insufficient and any expenditure of funds must be for entirely illegal purposes. (Western N. Y. Water Co. v City of Buffalo, 242 NY 202, 206-207 [1926], supra; Murphy v Erie County, 34 AD2d 295, 298 [4th Dept 1970], affd 28 NY2d 80 [1971], supra) It is against this historical and jurisprudential backdrop that the factual allegations supporting the plaintiffs’ waste causes of action must be viewed.
The "illegal official act” or the "waste” of which plaintiffs complain are described by the plaintiffs as: expenditure of any money to implement the sale or transfer of the water system prior to a series of referenda which plaintiffs claim are a condition precedent to such sale or transfer (amended verified complaint [hereinafter A VC] ¶ 53); the proposed sale or transfer of the water system contemplates depositing cash proceeds into a restricted trust fund pursuant to Public Authorities Law § 1226-g whereas the current water system income and assets are unrestricted (AVC ¶ 59); the proposed sale or transfer of the water system would seriously affect the financial condition of the City and impair the City’s credit (AVC ¶ 61); the proposed sale or transfer of the water system contemplates the *112 transfer of the capital reserve fund of the City’s water accounts to the new regional authority which is barred by General Municipal Law § 6-c (AVC ¶ 70); the proposed sale or transfer of the water system would terminate the ability of the City to achieve substantial savings by issuing water-related general obligation bonds pertaining to its water assets (AVC ¶ 75); the proposed sale or transfer of the water system would require the City to utilize its credit to fund or assist in the creation of a public authority in violation of the Constitution since the City is transferring revenues generated by its water system (AVC ¶ 77); the proposed sale or transfer of the water system is based upon a value without an appraisal and thus the City will utilize its credit to fund or assist in the creation of a public authority in violation of the Constitution (AVC ¶ 78); the proposed sale or transfer of the water system is premised upon the City losing an annual payment in lieu of tax, the City will not be completely relieved of various debts, and no proper valuation of the water system assets has been performed (AVC ¶ 83, 84, 89, 108, 110, 115); the proposed sale and transfer of the water system would violate a wide variety of laws regulating municipal finances, extension of municipal credit, availability of referenda, taxation authority, the operation of the regional water authority, ability of a City to obtain a fair return, and ability of a municipal corporation to sell real estate or enter into contracts with a public benefit corporation (AVC ¶ 70, 77, 84, 90, 91, 95-108, 109, 111, 112); and, the proposed sale and transfer of the water system would mean that the City would lose its ability to shift from real property taxation to water rents as the basis for municipal financing.
Notably absent from plaintiff’s pleading on their first cause of action under Second Class Cities Law § 22 and on their second cause of action under General Municipal Law § 51 are any allegations of fraud, collusion, corruption or bad faith. Plaintiffs do not claim that any defendant is personally profiting in any way from the proposed sale and transfer of the water system to the regional authority. Plaintiffs do not causally connect any alleged illegal act to any alleged waste by factual allegations. Plaintiffs do not allege that the municipal defendants are attempting to accomplish anything other than what they appear to be doing. Defendants have allegedly planned and undertaken to transfer and sell a municipal water system to a regional water authority as specifically sanctioned by State statutes and directed by local ordinances. While plaintiffs obviously and vigorously disagree with such *113 plans, they are unable to allege the specific type of waste or corruption required by the statutes upon which they rely as an essential predicate for the relief they seek. Plaintiffs fail to allege facts which demonstrate actual damages which could be fairly characterized as waste or as traceable to official corruption. While plaintiffs clearly articulate a wide range of public policy disputes with the defendants and have set forth alternatives which may (or may not) be more financially remunerative to the City of Utica, their arguments are appropriate for other forums, whether at the municipal, county or State level of government, to whose discretion such political decisions have been committed.
Earlier cases involving this water system have been identified as having significance for the litigation before this court. (Elefante v Hanna, 54 AD2d 822 [4th Dept 1976]; Hampton Hgts. Dev. Corp. v Board of Water Supply, 136 Misc 2d 906 [Sup Ct, Oneida County 1987]; Matter of Barile v City Comptroller of City of Utica, 56 Misc 2d 190 [Sup Ct, Oneida County 1968]; City of Utica v County of Oneida, 187 Misc 960 [1946]; City of Utica v County of Herkimer, 269 App Div 720 [4th Dept 1945], affd 295 NY 610 [1945].) There are, however, other decisions of this court which are relevant to the actual legal issues presented in this litigation on defendants’ motion.
This court has previously decided that the private causes of action for public official misconduct must be read narrowly to avoid inappropriate intervention by the judiciary in public policy issues which must be decided, in the last instance, by duly elected representatives. When Utica’s municipal water system was first acquired by the City of Utica, this court declined an invitation to intervene. (Hanrahan v Corrou, 170 Misc 922 [Sup Ct, Oneida County 1938].) The following paragraph of the decision is determinative of the pleading requirements for a private cause of action under the waste and anticorruption statutes relied upon by plaintiffs. It aptly summarizes the appropriate caution exercised by a court in a democratic society with a republican form of government (supra, at 925): "In enacting section 51 of the General Municipal Law, authorizing a taxpayer, under certain specified conditions, to prosecute an action restraining a municipal official from doing an unlawful act which will occasion waste or injury to the funds of the municipality of which he is an officer, it was not intended by the Legislature to give to the court the right to sit in judgment upon questions of administrative discretion. Such power would impair the right of home rule. Public of *114 ficials are responsible to the people for the faithful performance of their duties as well as the propriety and wisdom of the policy which they adopt. In the absence of illegality, fraud, collusion, corruption or bad faith, the court has no power to restrain the city from entering into or carrying out any agreement which it chooses to make. The terms 'waste’ and 'injury,’ as used in the statute, comprehend only wrongful, dishonest or illegal official acts, and are not intended to subject the action of an administrative official, acting within the limits of his authority and jurisdiction, to the scrutiny and control of a judicial tribunal. The court has no power or authority, much less the disposition, to regulate or superintend the official acts of one holding a civil appointment or to make itself the arbiter of a dispute between some dissatisfied taxpayer and the municipal authorities as to the advisability or wisdom of entering into some particular contract.” (Citations omitted.)
A subsequent decision of this court on the ability of Utica citizens, taxpayers and property owners to obtain judicial review of decisions to finance and construct low-income public housing likewise preconditioned resort to waste or anticorruption causes of action upon pleading and proof of "fraud, collusion or wilful misfeasance on the part of the commissioner or of any [public] official whose acts are here involved. There is no suspicion or claim of personal interest or gain, past, present or future.” (Borek v Golder, 190 Misc 366, 374 [Sup Ct, Oneida County 1947].) Were this court to require less, it would constitute an open invitation to every citizen, taxpayer, property holder, rate payer or resident who winds up on the losing side of a public policy debate to claim "waste” in an effort to reverse executive or legislative decisions on the local, county and State levels of government. Such an assumption of jurisdiction by this court would be unwarranted.
The waste and anticorruption statutes require a factual nexus between illegality and waste which is totally absent from plaintiffs’ pleading. Even if one assumes that plaintiffs have alleged illegality and even if one further assumes that plaintiffs have alleged waste, there is no allegation of fraud, collusion or wilful misfeasance which would directly connect the illegality to the waste.
While plaintiffs articulate a broad array of claimed illegalities, alleged irregularities and presumed unwise decisions, this court must conclude that plaintiffs have failed to state a cause of action. After extensive review of the hundreds of pages of pleadings, affidavits, exhibits and memoranda submitted on *115 this motion, it is abundantly clear that plaintiffs are attempting to substitute their own judgment for that of elected officials at the local, county and State levels regarding the ultimate wisdom of the City of Utica’s proposed sale and transfer of its water system to a regional authority.
In evaluating whether plaintiffs have alleged sufficient facts to constitute illegal, wrongful or dishonest acts, the court has also evaluated whether discretion has been vested in public officials and, if so, whether such grant of authority arguably insulates any resulting decisions from judicial review through private causes of action for public wrongs. (Murphy v Erie County, 28 NY2d 80, 87 [1971], supra.) Plaintiffs have sued the State Attorney-General although there is no claim of unconstitutionality of any State statute. Plaintiffs have not challenged the State statute which provides authority for the regional authority to which the municipal water system will be transferred. (Public Authorities Law § 1226-a et seq.) This statutory scheme reflects the reasoned determination of the State government to cooperate with municipal government in effectuating the transfer and sale of the water system. Although plaintiffs have attempted to fasten their waste claims upon alleged illegalities involving financing arrangements and potentials, impairment of local government authority, infringement of referenda rights and a broad spectrum of other miscellaneous particulars, they have not articulated any nexus between those alleged illegalities and the specific "waste” which they foresee as resulting from this proposed transfer and sale. The comprehensive State statutory scheme confirms the claim of the defendants that they have acted within an area of competence committed to their discretion.
The court has been urged to issue a declaratory judgment and related injunctive relief with respect to alleged financial details of the proposed transfer and sale based upon claims by plaintiffs of various illegalities. As already held, this court can find no required nexus between illegality and waste as required by the cited statutory provisions of the Second Class Cities Law or the General Municipal Law. Plaintiffs have additionally relied upon a decision of the Supreme Court, New York County, which, it is claimed, demonstrates the authority of this court to interfere with plans for bonding. (Giuliani v Hevesi, Mar. 1, 1996, index No. 410700/95.) That case involved an action by the Mayor of New York City to compel approval of a proposed bond issue by the City’s Comptroller. That case did not involve a taxpayer action, did not involve any cause of *116 action upon which plaintiffs rely and is, consequently, irrelevant to the issues before this court.
Plaintiffs have relied upon two additional causes of action to which the court now turns. Plaintiffs claim that the actions of defendants, excluding the Attorney-General or his client, the State of New York, have infringed upon constitutionally based voting rights. A local government may not hold a referendum on any matter unless it is required or authorized by an express constitutional or statutory provision. (Matter of McCabe v Voorhis, 243 NY 401 [1926].) Plaintiffs rely upon two provisions of the Constitution which apply to a county when it is deciding to adopt an alternative form of government and to a local government inability to adopt a local law impairing the powers of another local government. (NY Const, art IV, § 1 [h]; § 2 [d].) By their own terms, neither provision applies to the factual allegations in this litigation. Plaintiffs have identified no other source for a referendum requirement. The comprehensive State statutory scheme which has enabled the completion of the municipal defendants’ plans and determinations specifically prohibits a referendum on the transfer of this water system. (Public Authorities Law § 1226-g [1].) Plaintiffs have no cause of action or other legal claim based upon alleged voting or referenda requirements.
The final cause of action upon which plaintiffs seek to enjoin any further actions by the municipal defendants in connection with the proposed transfer and sale of the water system is based upon State environmental laws. Although it is unclear to this court whether any SEQRA claim would be ripe at this stage of the proposed transfer and sale process, plaintiffs must still satisfy a threshold requirement of standing. With respect to the SEQRA cause of action, plaintiffs have not alleged sufficient injury in fact to satisfy the standing requirements of New York State’s environmental review law. To obtain any judicial review, these plaintiffs must allege something more than the interests of the public at large; they must specifically allege facts which demonstrate some "special injury” beyond their bare identities as voters, taxpayers, rate payers, property owners, residents or citizens concerned about or involved in public affairs. (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 768-775 [1991]; Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 432 [1990], supra; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 412 [1987]; Montes Waste Sys. v Town of Oyster Bay, 199 AD2d 493, 494 [2d Dept 1993].) No special injury has been al *117 leged. Plaintiffs’ allegations of harm are uniformly conclusions bereft of factual foundation, vague or prospective and uncertain. Essentially, plaintiffs seek to litigate the SEQRA cause of action, as their others, in the capacity of a private Attorney-General. This court is constrained to find that no cause of action has been stated on this basis and in this context. The court is also concerned about SEQRA "finality” as well as a Statute of Limitations bar but declines to reach either issue at this time. (See, Matter of Young v Board of Trustees, 221 AD2d 975 [4th Dept 1995], supra.)
In conclusion, this court can only view plaintiffs’ dispute with defendants as essentially a public policy dispute which cannot be litigated in this forum. While plaintiffs are publicly minded, they are not the individuals to whose discretion the current management of the municipal water system is committed. Having failed to articulate any factual allegations which would, if believed, lead this court to believe that official misconduct has or will necessarily lead to waste of municipal assets, plaintiffs have no causes of action for waste. Having failed to demonstrate any colorable claim to a referendum requirement, especially in the face of a State statutory prohibition, plaintiffs have no cause of action to enforce voting "rights”. Having failed to allege or demonstrate any injury in fact, plaintiffs have no cause of action under SEQRA.
As courts have explained for generations, any remedy which may be available to plaintiffs lay in other forums. This court once again declines an invitation to evaluate the wisdom or prudence of conflicting views of public policy. A republican form of democratic government requires that the judiciary refrain from disrupting the elaborate checks and balances which regulate how and by whom decisions are made at the local, county and State levels of government.
Having reviewed the material identified in the Appendix, this matter having been submitted on July 22, 1996 and due deliberation having been had, it is hereby ordered that defendants’ motion to dismiss plaintiffs’ amended verified complaint for failure to state a cause of action is hereby granted in its entirety without costs.