*922 OPINION OF THE COURT
John T. Buckley, J.
There are two pending motions before this court in this action. Since the disposition of defendants’ motion for summary judgment may render consideration of plaintiffs’ motion for an extension of time to conduct additional disclosure unnecessary, the court will first decide whether defendants are entitled to an order dismissing plaintiffs’ causes of action.
CPLR 3212 authorizes this court to grant summary judgment in favor of the moving party if it is satisfactorily demonstrated that there are no disputed issues of material fact which would preclude awarding the movant the relief for which a prima facie claim has been made. Although as a method of accelerated judgment, such a technique deprives the opponent of trial, the Court of Appeals has underscored the need for judicial economy and the rights of other litigants since "when there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated.” (Andre v Pomeroy, 35 NY2d 361, 364 [1974].)
Summary judgment is the "procedural equivalent of a trial” (Falk v Goodman, 7 NY2d 87, 91 [1959]), and, as such, summary judgment is a " 'drastic remedy’ ” and should not be granted where there is any doubt as to the existence of a triable and "bona fide” issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].) When movant has made a prima facie showing which demonstrates that summary judgment is warranted, it is then incumbent upon the opposing party to show by evidentiary facts that a claim is real and can be established at trial. (Zuckerman v City of New York, 49 NY2d 557, 562-563 [1980]; Indig v Finkelstein, 23 NY2d 728 [1968].) "The purpose of the motion is to sift out evidentiary facts and determine from them whether an issue of fact exists. As such, the testimony of the nonmoving party appellant must be accepted as true and a decision on the motion must be made on the version of the facts most favorable to her.” (Strychalski v Mekus, 54 AD2d 1068, 1069 [4th Dept 1976].)
This court is not supposed to determine any facts at this stage of litigation but rather ascertain that there exist material disputes of fact. This court is to find issues not facts. Conversely, while there may well be disputed facts, they must *923 be relevant to elements of a cognizable cause of action. The existence of disputed facts alone does not entitle the opposing party to a denial of the motion.
The moving party on a summary judgment motion has the burden of demonstrating a prima facie entitlement to such relief as a matter of law, providing sufficient evidence in an admissible form to eliminate any material issues of fact. (Wine-grad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]; Zuckerman v City of New York, 49 NY2d 557, supra; Jordan v Musinger, 197 AD2d 889 [4th Dept 1993].) Of course, if there is simply no cause of action based upon the factual allegations in plaintiffs’ complaint, even when viewing the case most favorably to the nonmoving party, dismissal should be granted.
Plaintiffs are three individual taxpayers of the Utica City School District. While defendants characterize plaintiffs as "merely nominal taxpayers”, there has been no proof that plaintiffs lack standing as taxpayers within the district. There has been no certification of plaintiffs as representing a class of similarly situated taxpayers. Defendants are sued for damages individually and in official capacities. Defendants are the Superintendent of the Utica City School District, specific members of the Utica City School District Board of Education, and the Board of Education of the district. Plaintiffs’ August 1993 complaint states five causes of action seeking monetary damages in a specific amount exceeding $2 million. The first cause of action is based upon a "fraudulent” misrepresentation which caused a Board of Education majority to authorize certain teacher salary increases. The second cause of action is against Superintendent Herbowy for his negligence in failing to uncover unintended teacher salary increases. The third cause of action is against defendant Steinback for a breach of his contract with the school district in negotiating a teacher contract which provided for teacher salary increases of more than 5.5%. The fourth cause of action is against individual board members and the Board of Education which voted for teacher salary increases because they failed to use reasonable care and due diligence. The fifth cause of action is against individual hoard members and the Board of Education for breach of a fiduciary relationship. As a general background for their varied causes of action, these district taxpayers allege that certain defendants recommended approval of an agreement with the Utica Teacher’s Association which in fact provided teachers with salary increases in excess of 4.8% annual increases ostensibly authorized in the agreement. The recom *924 mendations, assurances, advice and information provided by some defendants and relied upon by other defendants and undiscovered by the Board defendants are alleged to have been based upon false information and "fraud”.
It is important to note what this case does not involve. Plaintiffs have not made specific factual allegations of "fraud” and there are no allegations that any of those named individually and in official capacities personally profited. "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.” (CPLR 3016 [b].) Plaintiffs elected to forego any remedies they may have had under CPLR article 78 or article 30 and are not relying upon any specific constitutional, statutory or regulatory requirements or prohibitions. So, for example, plaintiffs have not identified State funds which are being misspent nor are they seeking to litigate a "gift of public funds” cause of action provided by the New York State Constitution and enforceable through General Municipal Law § 51. (Matter of Rampello v East Irondequoit Cent. School Dist., — AD2d —, 1997 NY Slip Op 01087 [4th Dept. Feb. 7, 1997]; Matter of Schulz v State of New York, 217 AD2d 393 [3d Dept 1995].) This case does not involve causes of action under New York State Constitution, article VIII, § 1 nor State Finance Law § 123-b. Plaintiffs have not alleged any violations of any State statutes including the Education Law or any regulations promulgated thereunder. Plaintiffs, dissimilar to many taxpayer plaintiffs, seek damage relief based upon negligence and fraud. Plaintiffs have not complied with notice of claim requirements.
The only apparent authorization for their standing to litigate as taxpayers seeking damage relief arises under a very specific statute with unique pleading and proof requirements. As such, this is not a typical negligence case nor is it a common-law fraud or misrepresentation action. This is a taxpayer damage action brought under General Municipal Law § 51.
Plaintiffs’ causes of action must be adjudged defined solely by reference to a specific anticorruption statute, namely General Municipal Law § 51. This court returns to a cause of action which it considered in a case involving a taxpayer challenge to regionalization of a municipal water board and allegations of improper conduct. (Montecalvo v City of Utica, 170 Misc 2d 107 [Sup Ct, Oneida County 1996], affd 233 AD2d 960.) This court held that a "pure” section 51 cause of action *925 requires "special allegations of waste tied to corruption”. (Montecalvo v City of Utica, 170 Misc 2d, at 111.) Taxpayer resort to the judiciary implicates serious separation of powers concerns. Unbounded taxpayer litigation would convert all legislative acts into the functional equivalent of infant settlement applications. Legislative bodies would act upon the sufferance of the judiciary. Such disequilibrium would subvert legislative power. The republican form of government contemplates separate spheres of governmental competence with an elaborate system of checks and balances to remedy abuses. While democratic innovations have led to a much broader role for taxpayers as participants in governance, the availability of damage actions as a check on official misconduct is still sharply limited. To empower taxpayer litigants disenfranchises the voters for whom representatives legislate.
This case presents an example of the responsibilities which plaintiffs seek to shift to this court through a broad reading of the statute. Plaintiffs’ complaint alleges that the negotiators for a teachers’ contract were given a percentage increase up to which the Board of Education would approve a new contract. An agreement was reached which, while ostensibly keeping within the authorized percentage for a salary increase, actually obligated the district to pay substantially greater teacher salaries. While not detailing the actual fraud, the complaint alleges that the negotiators knew or should have known of this disparity between the stated percentage increase and the actual dollar increase but somehow concealed such information from the Board of Education. The method of concealment is nowhere alleged nor apparent. The Superintendent is charged with "negligence” and the approving Board of Education with either negligence or breach of their fiduciary duty. Plaintiffs have alleged (but not proved) what may be described as a lack of competence on the part of the Board of Education. It has not been alleged or established that it was not possible to understand the economic consequences of the contract from its terms. It has not been alleged or established that the "fraud” consisted of anything other than one or two individuals’ superior understanding of the negotiated deal which they neglected or refused to share with their employer. Even assuming plaintiffs could prove such employee or contractor misconduct or malfeasance, it is not clear that there is or should be any other remedy than either discharge or an action by the Board of Education for breach. What plaintiffs really seek to litigate, at best, are rights enforceable by the Board of Education.
*926 Indeed, what plaintiffs have articulated is the type of claim which might be directed at virtually every piece of significant legislation at every level of Legislature, from town to State to Federal. How often has it been claimed that various misrepresentations form the basis of a legislative act? Stating this type of claim reveals it to be essentially a political question, one which is necessarily, if not theoretically, beyond the competence of the judiciary. Whether or not a particular contract with teachers is economically prudent is a dispute which does not belong in this court. If the Utica Board of Education made a bad deal with its teachers, whether to seek a remedy is a political decision, one which apparently the plaintiffs have been unable to obtain through their representatives or at a ballot box. This is certainly the type of dispute which has been constitutionally allocated to the legislative power. Casting this dispute as. one which requires a remedy for "fraud” does not rectify the constitutional defect of seeking a judicial remedy when a legislative remedy is unavailable.
Only very specific disputes involving the legality of legislative acts and the performance of official duties by officeholders may be resolved in an action for damages and this is not such a dispute. A cause of action for official corruption must contain special, detailed factual allegations of waste tied to corruption. While such an action can be stated under General Municipal Law § 51, plaintiffs have failed to plead any such causes of action here. The causes against the individual members of the Board of Education and against the Board of Education itself rely upon a breach of "fiduciary responsibility” and failure to exercise "due diligence”. Were this court to recognize these causes of action, every loser in a legislative vote would be enabled to litigate, albeit with a requirement that the term "fraud” be used to describe the way in which the vote was lost. The cause of action against the Superintendent relies upon negligence and, if recognized, would serve as an invitation to endless litigation over every aspect of a district’s budget. Finally, the cause of action against Steinback and the Superintendent is a transparent attempt to require this court to perform judgmental activities which are allocated to the Board of Education. There is no judicial remedy for what certain taxpayers may perceive as bad government. There are simply no allegations of waste tied to corruption. There are no specific allegations of fraud.'
*927 Having reviewed the material identified in the appendix, and due deliberation having been had, it is hereby ordered that defendants’ motion for summary judgment is granted and plaintiffs’ complaint is dismissed.