*430 OPINION OF THE COURT
Chief Judge Wachtler.
In this article 78 proceeding, we again consider the issue of standing in the context of the State Environmental Quality Review Act (SEQRA) (ECL art 8). The petitioner, Mobil Oil Corporation, brought this proceeding to challenge the adequacy of the environmental review undertaken by respondent, Syracuse Industrial Development Agency (SIDA), in connection with the construction of a shopping mall and to annul SIDA’s approval of the project. SIDA argues that Mobil is without standing to assert a claim based on SEQRA. We agree with SIDA that under the facts present in this case, Mobil lacks standing to contest SIDA’s approval of the project or to argue that its review under SEQRA was incomplete. Accordingly, the order of the Appellate Division should be affirmed.
Oil City, a 750-acre region in the respondent City of Syracuse (City), is located north of the downtown business area and is bounded by Onondaga Lake to the north and by interstate highways to the east, south and west. Mobil owns real property in Oil City and has placed petroleum tanks and distribution terminals there. In the summer of 1987, the Pyramid Company of Onondaga (Pyramid), a private developer that is not a party to this proceeding, announced plans to undertake the redevelopment of Oil City. Pyramid issued a "Lake Development Master Plan” that set forth a scheme for introducing retail, cluster and multiple-family housing and light industrial uses to Oil City. In September of 1987, Pyramid applied to SIDA for the issuance of $120 million in taxable bonds to fund the construction of a 1.4 million square foot shopping mall called Carousel Center. Carousel Center would be located on a 50-acre parcel on the south end of Onondaga Lake, two miles from the central business district of Syracuse.
For purposes of compliance with SEQRA, SIDA undertook the responsibility of acting as lead agency (see, ECL 8-0111 [6]; *431 6 NYCRR 617.2 [v]). SIDA determined that the construction of Carousel Center was a Type I action under SEQRA, that is, that it was likely to have a significant effect on the environment and could require the preparation of an environmental impact statement (see, ECL 8-0109; 6 NYCRR 617.2 [ii]; 617.11-617.12). Pyramid prepared a draft environmental impact statement (DEIS), which SIDA accepted in November of 1987. SIDA scheduled a public hearing for November 30, 1987, and established a deadline of December 14, 1987, for the submission of written comments on the DEIS. In response to objections raised at the public hearing, SIDA had Pyramid prepare a supplemental DEIS, which SIDA accepted as complete on January 5, 1988. SIDA extended the period for public comment until February 8, 1988. On March 23, 1988, SIDA issued an 11-volume final environmental impact statement that consisted of more than 2,800 pages of text and technical material. On April 12, 1988, SIDA issued a statement of findings and gave its final approval to the Carousel Center project.
In June of 1988, SIDA and the City entered into an agreement with Pyramid for a payment in lieu of taxes (PILOT). In addition to providing a detailed schedule of payments that was tied to the completion and operation of Carousel Center, the PILOT agreement obligated SIDA to use PILOT funds to construct a series of improvements that would lead to the redevelopment of the harbor and marina areas of Oil City. The PILOT agreement also provided for the financing of infrastructure improvements in the Franklin Square district within Oil City, as part of a separate redevelopment project that is itself the subject of SEQRA review. This June 1988 agreement was superseded by a second PILOT agreement that became effective on August 24,1989.
On July 20, 1988, Mobil, along with Sun Refining & Marketing Company and Citgo Petroleum Corporation, commenced an article 78 proceeding against SIDA and the City in which they sought to annul: (1) SIDA’s resolution approving Pyramid’s request for funding of Carousel Center; (2) SIDA’s statement of findings with respect to Carousel Center; (3) SIDA’s review of the Carousel Center project under SEQRA; and (4) any action undertaken by SIDA or the City in connection with the Carousel Center project. In an amended petition, the petitioners additionally sought to set aside Ordinance No. 380 of 1988, which was adopted by the City’s Common Council in connection with the project, and to annul the June 1988 PILOT agreement. Permission was granted to add the Belcher *432 Company of New York as a petitioner on one of the causes of action and to add the members of the Common Council as respondents.
The petitioner’s principal argument was that SIDA had improperly truncated its review of the Carousel Center project by failing to consider the secondary and cumulative effects of future development in Oil City. The petitioners contended that the construction of Carousel Center was merely the first step in what was an extensive plan for redevelopment of the entire area. Further, the petitioners alleged that Pyramid’s plans for the redevelopment of Oil City had been facilitated by the respondent Common Council’s adoption of enabling legislation and by the signing of the June 1988 PILOT agreement. According to the petitioners, SIDA’s review of the Carousel Center project should have considered the other plans for Oil City development that were already in existence, and SIDA’s failure to do so was an improper segmentation of the SEQRA review process.
The respondents countered that the petitioners’ allegations of harm were speculative because redevelopment of Oil City was in a conceptual stage and there were no formal proposals for future action before SIDA or any other agency. The respondents argued that to the extent that the petitioners’ allegations of harm related to development that was still in its planning stages and not to Carousel Center specifically, there was no showing of injury in fact for purposes of according the petitioners standing to challenge SIDA’s review and approval of the Carousel Center project.
Supreme Court, Onondaga County, granted the respondents’ motion to dismiss. Taking the petitioners’ allegations that SIDA had improperly segmented the SEQRA review process as true for purposes of the motion to dismiss (see, e.g., Matter of Burke v Sugarman, 35 NY2d 39, 42), the court nonetheless held that Mobil lacked standing to challenge SIDA’s compliance with SEQRA because Mobil had not demonstrated that it had suffered injury in fact. The court held that the other three oil companies also lacked standing because they had not exhausted their administrative remedies. A second article 78 proceeding seeking similar relief, brought by Citizens’ League for an Environmentally Acceptable Northeast, Inc., was also dismissed at this time. Mobil alone appealed, and the Appellate Division, Fourth Department, affirmed for the reasons stated at the Supreme Court. We now affirm.
*433 In Matter of Dairylea Coop. v Walkley (38 NY2d 6), we set forth a two-part test for determining when a party has standing to contest administrative action. As we held in that case, a petitioner needs to "show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.” (Id., at 9.) In Matter of Sun-Brite Car Wash v Board of Zoning & Appeals (69 NY2d 406), we discussed the requirement of injury in fact and noted that "something more than the interest of the public at large is required to entitle a person to seek judicial review — the petitioning party must have a legally cognizable interest that is or will be affected by the * * * determination” (id., at 413). Although we noted in that case that certain petitioners with an especially close relationship to property affected by agency action are presumptively aggrieved by such action and do not have to plead special damages or in-fact injury, we stated as a general principle that "[a]ggrievement warranting judicial review requires a threshold showing that a person has been adversely affected by the activities of defendants (or respondents), or — put another way — that it has sustained special damage, different in kind and degree from the community generally” (id., at 413).
Under the facts present in this case, we believe that Mobil, although a nearby property owner, is not presumptively aggrieved by the Carousel Center project and that it must demonstrate that it has suffered special injury before it can be accorded standing to challenge SIDA’s review of the project. To qualify for standing to raise a SEQRA challenge, a party must demonstrate that it will suffer an injury that is environmental and not solely economic in nature (see, Matter of Niagara Recycling v Town Bd., 83 AD2d 335, 341 [Hancock, Jr., J.], affd 56 NY2d 859; see also, Waebster Assocs. v Town of Webster, 112 Misc 2d 396, 402, affd 85 AD2d 882, revd on other grounds 59 NY2d 220). We agree with the lower court that Mobil has not alleged that it will suffer any specific environmental harm as a result of the redevelopment of Oil City and that Mobil therefore lacks standing to challenge the adequacy of SIDA’s review of the Carousel Center project.
In reaching this conclusion, we need only look at the allegations contained in Mobil’s petition. The injuries pleaded by Mobil, which are classified as "secondary and cumulative impacts of the Lakefront Development Master Plan,” include *434 "the cost to the City of Syracuse of acquiring the Oil City parcels through condemnation, the cost of relocating the tanks currently located in Oil City, the increased cost of fuel to residential, commercial and industrial users resulting from the relocation of the tanks, the adverse effect of these increased fuel costs on the commercial and industrial sectors of the City, and possible loss of employment resulting from increased costs to competitive industries.” Mobil repeats these basic allegations, with some elaboration, in its amended petition dated August 15, 1988. Mobil makes absolutely no showing in its petition that it would suffer any environmental injury as a result of the proposed development; rather, the petition cites only the economic costs to Mobil and to local taxpayers and consumers if Mobil’s facilities are relocated. Mobil’s additional allegation that construction of the mall will adversely affect the downtown business district will not suffice to give Mobil standing either, since there is no showing as to how Mobil, a property owner in Oil City, would be affected by a change in the economic climate of the downtown business district, which is located two miles from Oil City. Finally, we would simply note that, even taking Mobil’s allegations as true, as we must, the economic injuries alleged by Mobil are not related to the Carousel Center project specifically, but rather to a broader plan for redevelopment that, while likely to occur, has not yet been formally submitted to SIDA or any other agency for consideration or approval.
Our recent decision in Matter of Har Enters. v Town of Brookhaven (74 NY2d 524) is consistent with the result we reach today. In Har, we held that a property owner whose land was targeted for rezoning had a "legally cognizable interest in being assured that the town satisfied SEQRA” and that the owner consequently had standing to bring a SEQRA challenge, even absent a showing of specific environmental harm (id,., at 529). Based on our holding in Sun-Brite that a property owner, by virtue of an especially close relationship to the subject property, may have standing to seek judicial review absent a showing of special damages, we stated in Har that "if any party should be held to have a sufficient interest to object [to an inadequate SEQRA review] — without having to allege some specific harm — it is an owner of property which is the subject of a contemplated rezoning.” (Matter of Har Enters. v Town of Brookhaven, supra, at 529.) Indeed, we noted in that case that to deny standing would insulate planning and zoning decisions of the kind involved in Har from judicial *435 review, which would clearly be inimical to the public interest (id.). Here, there is not the same close nexus that was present in Har.
Finally, as to Mobil’s standing to contest the execution of the June 1988 PILOT agreement and the Common Council’s adoption of Ordinance No. 380 of 1988, we agree with the lower court that Mobil has failed to allege that it has suffered any injury as a result of these actions and that Mobil consequently lacks standing to challenge them as well.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Judges Simons, Kaye, Alexander, Titone and Bellacosa concur; Judge Hancock, Jr., taking no part.
Order affirmed, with costs.