OPINION OF THE COURT
Joseph Harris, J.
Petitioner, in this CPLR article 78 proceeding, moves for a judgment: (1) declaring that respondent lacks authority to require prior approval of a contract for petitioner’s professional services as an attorney by Tower Apartments, Inc. (Tower or Housing Company); (2) nullifying a final determination of respondent Commissioner refusing to authorize payment to petitioner of legal fees incurred by Tower; or, in the alternative, (3) directing respondent Commissioner to approve the payment by Tower of said professional fees to petitioner.
Respondent opposing the petition asserts as defenses: (1) that this proceeding is time barred; (2) that petitioner lacks standing to maintain this proceeding; (3) that his interpretation of the applicable statutory and regulatory provisions so as to require his prior written approval of the retainer agreement was lawful; and (4) that his denial of the payments to petitioner for legal services was lawful and proper in all respects.
Tower is a limited-profit housing company incorporated under the Mitchell-Lama Act, now codified in article II of the Private Housing Finance Law, to own and manage low-income rental housing. Tower owns and manages some 284 one-, two- and three-bedroom rental units in two separate locations in the City of Buffalo, New York. Tower is subject to oversight by respondent Commissioner pursuant to Private Housing Finance Law article II, and those supplementary regulations of the Commissioner lawfully promulgated thereunder.
Petitioner, an attorney, entered into a retainer agreement with Tower to be paid the sum of $15,000 per annum for three *719 years commencing in 1991. Petitioner performed legal and lobbying services for Tower during the term of the agreement.
During 1992 and 1993 petitioner wrote to respondent Commissioner setting forth petitioner’s efforts on behalf of Tower and requesting approval of his counsel fees.
Myron Holtz, Deputy Commissioner of the Division of Housing and Community Renewal (DHCR), refused to grant permission to Tower to pay petitioner’s fees, on the grounds that petitioner’s work did not benefit Tower’s tenants, but only its owners, officers and debenture holders.
On August 4, 1993, petitioner sent Oberdann F. Luparello, president of Tower, his statement for services for 1991, 1992 and 1993, in the sum of $46,950 ($45,000 fees plus $1,950 accrued interest). Said statement describes his work as "lobbying services.”
By letter dated August 25, 1993 Mr. Luparello communicated with DHCR Deputy Commissioner Holtz, requesting DHCR’s counter-signature on the $46,950 check that Mr. Luparello had enclosed with his letter. If counter-signed, said check was to be paid to petitioner.
By letter dated September 22, 1993 Deputy Commissioner Holtz denied Mr. Luparello’s request.
By letter dated October 26, 1993 petitioner wrote to respondent Commissioner Halperin seeking final determination of the matter, again setting forth his efforts on behalf of Tower, and requesting approval of his fees.
By letter to petitioner dated February 10, 1994, respondent Halperin issued his "final determination of the matter,” wherein he declined to alter the position of DHCR not to approve the use of Tower’s funds to pay petitioner’s fees. Said determination states, in relevant part, as follows:
"The use of housing company funds for personal service contracts, of which your proposed legal retainer is one, is restricted by regulation. Title IX of the New York Code of Rules and Regulations (NYCRR), Section 1728-1.3 (a) states:
"The following budgetary items require special, prior written approval from the division ***(!)*** legal or fiscal fees * * * (3) Any contract for personal services.[1]
*720 "Further, 9 NYCRR 1728-4.1 (a) states:
"Purchases and contracts for materials and services will be limited to those items needed for project operation * * * "Therefore, it was necessary for division staff to determine whether the services you provided were housing company expenses 'needed for project operation.’[2] "I have been advised that DHCR staff determined that most of the specific duties you performed were in the interests of the owners of Tower Apartments and not for the benefit of the housing company residents; i.e., 'needed for project operation.’ Consequently, these activities were not considered to be proper expenses of the housing company * * *
"You have acknowledged that neither you nor the housing company received the required 'prior written approval from the division.’ In fact, all parties were advised by the Division, repeatedly, orally and by letter, that staff did not deem these to be expenses reimbursable from housing company funds, and that the performance of these services, in anticipation of future approval, was not to continue. Nevertheless, I understand that you continued to perform such services.”
Petitioner asserts that respondent’s regulations unlawfully require respondent’s prior approval for Tower to enter into a contract for legal services. Alternatively, if such approval is required, petitioner asserts that refusal to authorize payment is arbitrary and contrary to law.
More specifically, in his first cause of action, petitioner alleges that respondent’s interpretation of 9 NYCRR 1728-1.3 (a) (1) and (3) to require respondent’s approval of Tower’s contract with petitioner for legal services is not authorized by Private Housing Finance Law § 27 (4) (d) and invalid. Petitioner also alleges that respondent’s promulgation of 9 NYCRR 1728-4.1 (a) limiting Tower’s contracts for services to those necessary for project "operation” is contrary to law and invalid.
Petitioner’s second cause of action alleges that respondent *721 Commissioner does have the authority to approve Tower’s payment of professional fees to petitioner, and that his refusal to do so was arbitrary and capricious.
In order to have standing to contest administrative action, a party must " 'show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.’ ” (Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433 [1990], citing Matter of Dairylea Coop, v Walkley, 38 NY2d 6 [1975].) To establish standing, petitioner must allege a threat of cognizable injury different in kind from the public at large. (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 778 [1991].)
Petitioner alleges, and the court finds, an injury different in kind from the public at large — that he has been unlawfully deprived of his fee by respondent. Moreover, petitioner avers, and the court finds, that respondent’s refusal to authorize Tower to pay petitioner his fees places petitioner within the zone of interests protected by the Private Housing Finance Law.
Accordingly, petitioner has standing to maintain this proceeding.
The determination to be reviewed became final and binding upon the petitioner on February 10, 1994, the date when respondent issued his "final determination” refusing to authorize payment of petitioner’s legal fees and the date when it was clear that petitioner was aggrieved. (See, CPLR 217 [1]; Bitondo v State of New York, 182 AD2d 948 [3d Dept 1992].)
Since this proceeding was commenced within four months of February 10, 1994 — on June 8, 1994 — it was timely commenced.
The standard of review applicable to the instant proceeding is whether the respondent’s "determination was arbitrary and capricious or affected by an error of law.” (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758.) "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ., 34 NY2d 222, 231.) Simply stated, the arbitrary and capricious test is one of rationality. (34 NY2d, at 231, supra.) Furthermore, an administrative agency’s interpretation of a statute which it is entrusted to implement and enforce is to be afforded great deference and "will be upheld if not irrational or unreasonable”. (Matter of Gallo v New York *722 State Teachers’ Retirement Sys., 121 AD2d 24, 26, Iv denied 69 NY2d 610.)
The purpose of article II of the Private Housing Finance Law is to provide a supply of low-cost housing to low-income families. (See, Private Housing Finance Law § 11.) Respondent has been vested with broad powers relating to his responsibility for implementing and enforcing the Private Housing Finance Law and accomplishing the goal of providing low-cost housing to persons of low income. (See, Private Housing Finance Law §§32, 32-a.) The rents charged to persons who reside in Private Housing Finance Law established housing is directly related to the costs which are incurred by the housing company. Thus, if respondent were not permitted to have any control over the costs incurred by housing companies, said entities would have unfettered discretion to enter into contracts that would ultimately result in higher rent for the tenants, thereby thwarting the goal of providing low-cost housing to low-income families.
Respondent’s adoption, implementation and interpretation of 9 NYCRR 1728-1.3 and 1728-4.1, to require his prior approval of contracts such as the one at issue, and then to approve such contracts only if they serve to benefit the tenants of the housing company, has a basis in fact and is neither irrational nor unreasonable. (See, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., supra; Matter of Pell v Board of Educ., supra; Matter of Gallo v New York State Teachers’ Retirement Sys., supra.)
Inasmuch as the respondent is charged with maintaining low-cost housing for low-income persons, his determination to disapprove payments on Housing Company contracts which were not preapproved by him and which primarily benefit the owners of the company rather than the tenants has a sound basis in fact and is rational and reasonable. (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., supra; Matter of Pell v Board of Educ., supra; Matter of Gallo v New York State Teachers’ Retirement Sys., supra.) Application for prior approval would have solved all the issues of this case. The primary work done by petitioner was lobbying; the benefit to tenants, if any, was only incidental.
Accordingly, the petition is, in all respects, dismissed.

. Despite the fact that pursuant to Private Housing Finance Law § 17 (1) (a), Tower is granted the specific power: "To make and execute contracts and other instruments necessary or convenient in the exercise of its powers”, pursuant to Private Housing Finance Law § 27 (4), Tower must obtain *720 the prior written consent of respondent Commissioner before undertaking certain actions, including major transactions such as selling real estate or constructing a project. DHCR’s prior consent is also required to "[e]nter into contracts for the operation of the project.” (Private Housing Finance Law § 27 [4] [d] [emphasis added].)

. A portion of petitioner’s services was in fact deemed to be Housing Company expenses "needed for project operation”, and respondent in fact approved payment in the sum of $3,000 for these services.