■ In the Matter of VILLAGE OF CANAJOHARIE, Appellant, v PLANNING BOARD OF THE TOWN OF FLORIDA et al., Respondents. [882 NYS2d 526]—

---

McCarthy, J. Appeal from a judgment of the Supreme Court (Catena, J.), entered October 21, 2008 in Montgomery County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review, among other things, a determination of respondent Planning Board of the Town of Florida approving the site plan application of respondents Hero Group, Inc. and Beech-Nut Nutrition Group.

In 2007, Beech-Nut Nutrition Corporation (sued as Beech-Nut Nutrition Group)[1] made a business decision to consolidate operations from its three existing facilities to one central location. At this time, Beech-Nut operated two manufacturing facilities in Montgomery County—one in the Village of Canajoharie and one in the Town of Fort Plain—and a corporate headquarters in Missouri. While Beech-Nut considered many options, including the option of relocating outside of New York, it ultimately decided to consolidate operations within New York and indeed within Montgomery County; that is, it endeavored to build a new facility in a business park owned by respondent Montgomery County Industrial Development Agency (hereinaf-

---

1. Beech-Nut Nutrition Corporation is an affiliated subsidiary of respondent Hero Group, Inc. and the two companies are referenced in various collective ways throughout the record. This decision will reference them collectively as Beech-Nut.

ter IDA) and located in the Town of Florida, Montgomery County.

To that end, Beech-Nut sought and received funding for the project from respondent Empire State Development Corporation and thereafter enlisted the assistance of the IDA in making the project feasible. In its application to the IDA, Beech-Nut detailed its corporate decision to consolidate and relocate (i.e., to preserve its competitive position, meet expanding production needs and maintain compliance with stringent manufacturing and safety requirements) and further detailed the infeasibility of consolidating and expanding at the Canajoharie facility itself (i.e., the 115-year-old facility was in great need of modernization, had recently been damaged by a flood and had an extremely limited physical footprint). Beech-Nut further detailed its exploration of relocating its operations outside of New York.

In the meantime, over the course of many months, review of the project under the State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) proceeded, with respondent Planning Board of the Town of Florida acting as the lead agency (*see* ECL 8-0111 [6]; 6 NYCRR 617.2 [u]). In addition, a payment in lieu of tax (hereinafter PILOT) agreement and lease were eventually entered into between Beech-Nut and the IDA providing additional financial assistance for the project. Following a May 15, 2008 special meeting of the Planning Board, the project went forward and construction commenced.[2]

Petitioner commenced this combined declaratory judgment action/CPLR article 78 proceeding alleging various violations of SEQRA and the General Municipal Law. In addition to seeking a temporary restraining order and preliminary injunction enjoining any work on the project, petitioner sought a declaration that the site plan approval and findings statements for the project were invalid, that the PILOT and lease agreements were invalid and that the financing assistance package from Empire State Development was invalid. Following a hearing, the request for a temporary restraining order and injunctive relief was denied. Thereafter, Supreme Court dismissed the entire petition on various alternative grounds, including standing, prompting this appeal. We now affirm.

In its amended petition, petitioner alleged that the Planning

---

2. While the minutes of this special meeting clearly reflect that subdivision approval was granted and that conditions to the site plan were approved, the minutes do not clearly reflect that the site plan itself was approved. Nevertheless, it is undisputed that, following this meeting, all involved agencies and parties proceeded with the project.

Board failed to comply with SEQRA by illegally segmenting the abandonment of the facility in Canajoharie from the relocation project, by failing to take a hard look at the alternative of either no action or renovation of the facility in Canajoharie and by failing to take a hard look at measures to mitigate adverse environmental impacts on it. The amended petition further alleges that the IDA and Empire State Development, as involved agencies in the relocation project, also violated SEQRA. We find that all claims based on alleged SEQRA violations were properly dismissed on standing grounds.

Generally, standing to challenge compliance with SEQRA turns on a showing by the challenger that it has sustained an injury-in-fact different from that of the public at large and one that falls within the zone of interest protected by SEQRA (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 777 [1991]). A municipality, such as petitioner, "must demonstrate how its personal or property rights, either personally or in a representative capacity, will be directly and specifically affected apart from any damage suffered by the public at large" (*Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs*, 46 AD3d 979, 983 [2007], *lv denied* 10 NY3d 706 [2008] [internal quotation marks and citation omitted]). Moreover, with respect to SEQRA claims in particular, a challenger "must demonstrate that it will suffer an injury that is environmental and not solely economic in nature" (*Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d 428, 433 [1990]).

Even viewing the allegations in the amended petition in a light most favorable to it (*see e.g. Matter of Powers v De Groodt*, 43 AD3d 509, 513 [2007]), petitioner failed to make any showing that it would indeed suffer a specific or direct environmental harm as a result of the proposed project (*see Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency*, 76 NY2d at 433-434).[3] Rather, the amended petition contains nothing more than allegations of potential economic harm, ranging from the loss of employment, commercial activity and sales tax revenue, to negative impacts on population, housing values and resources, to increased tax burdens for all remaining property owners. To this end, even the allegations of economic harm do not arise from the proposed project itself but, rather, from Beech-Nut's business decision to transfer all manufacturing and corporate

---

**3.** Because Canajoharie is located approximately 20 miles from the project, it most certainly is not presumptively aggrieved by it (*see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 413-414 [1987]).

operations to Florida, including operations in Canajoharie. Since "economic injury [alone] does not confer standing to sue under SEQRA" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 777), petitioner lacked standing to challenge the adequacy of the SEQRA process concerning the proposed project in Florida (*see Matter of Widewaters Rte. 11 Potsdam Co., LLC v Town of Potsdam*, 51 AD3d 1292, 1294 [2008]; *Matter of Nature's Trees v County of Suffolk*, 293 AD2d 543, 544 [2002], *lv denied* 98 NY2d 608 [2002]; *Matter of Nature's Trees v County of Nassau*, 293 AD2d 544, 545-546 [2002], *lv denied* 98 NY2d 608 [2002]; *Matter of Blue Lawn v County of Westchester*, 293 AD2d 532, 533 [2002], *lv denied* 98 NY2d 607 [2002]; *Matter of Bridon Realty Co. v Town Bd. of Town of Clarkstown*, 250 AD2d 677, 677-678 [1998], *lv denied* 92 NY2d 813 [1998]; *Matter of Valhalla Union Free School Dist. v Board of Legislators of County of Westchester*, 183 AD2d 771, 772-773 [1992], *lv denied* 80 NY2d 758 [1992]).

Next, as petitioner was not an "[a]ffected tax jurisdiction" (General Municipal Law § 854 [16]), it cannot challenge the PILOT agreement as violating General Municipal Law § 859-a (3) and § 874 (4) (a). As to its challenge to the PILOT and lease agreements as violating the antipirating provisions of General Municipal Law § 862, we find that this claim was also properly dismissed. Although the IDA only generally noted that the project will promote and maintain jobs in New York, it specifically determined that the relocation project was "reasonably necessary to preserve the competitive position" of Beech-Nut in its industry (General Municipal Law § 862). Supreme Court properly rejected petitioner's conclusory and unsupported allegations that this finding is unsupported by the record and/or arbitrary and capricious (*see Matter of Main Seneca Corp. v Erie County Indus. Dev. Agency*, 12 AD3d 1113, 1114 [2004]; *cf. Matter of Main Seneca Corp. v Town of Amherst Indus. Dev. Agency*, 100 NY2d 246, 251-252 [2003]).

Finally, petitioner's remaining contentions, to the extent properly before us, have been reviewed and found to be without merit.

Cardona, P.J., Mercure, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed, without costs.