Matter of Peachin v City of Oneonta (2021 NY Slip Op 02863)





Matter of Peachin v City of Oneonta


2021 NY Slip Op 02863


Decided on May 6, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 6, 2021

531566
[*1]In the Matter of Johna M. Peachin et al., Appellants,
v
City of Oneonta et al., Respondents, et al., Respondent.

Calendar Date:March 18, 2021

Before:Garry, P.J., Lynch, Clark, Aarons and Colangelo, JJ.

Douglas H. Zamelis, Cooperstown, for appellants.
Kehoe & Merzig, PC, Oneonta (David S. Merzig of counsel), for City of Oneonta and others, respondents.
Charles V. Martabano, Katonah, for Parkview Development & Construction, LLC, respondent.



Lynch, J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), entered June 17, 2020 in Otsego County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review, among other things, a determination of respondent City of Oneonta Planning Commission granting site plan approval to respondent Parkview Development & Construction, LLC.
In July 2019, respondent Parkview Development & Construction, LLC presented a proposal to respondent City of Oneonta Planning Commission to construct a 73,500 square foot, four-story, mixed use building in the City of Oneonta, Otsego County. The proposal included the construction of 64 affordable-housing apartment units designed to attract local artists and middle-income residents. It also included the construction of an educational facility developed in conjunction with respondent Hartwick College, which would provide testing, product development and support resources for local grain industry professionals. The project was proposed for the site of a 2.12-acre municipal parking lot, with the project design covering less than one acre.
Following the submission of a State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) full environmental assessment form, with Part 1 completed, the Planning Commission, as lead agency, designated the project a type I action insofar as it was adjacent to a nationally listed historic property. The proposal was reviewed at public meetings before the Planning Commission and, in October 2019, respondent Stephen Yerly — the City's Code Enforcement Officer (hereinafter CEO) — submitted a memorandum to the Planning Commission confirming that the proposal was in compliance with the parking requirements set forth in the City of Oneonta Zoning Ordinance (hereinafter the zoning code). Petitioners attempted to appeal the CEO's determination to respondent Oneonta Zoning Board of Appeals, but the City attorney informed petitioners that no appeal could be taken because they had neither "applied for, [n]or been denied" a permit from the Code Enforcement Office.
On November 6, 2019, the Planning Commission issued a negative declaration of environmental significance and a resolution granting site plan approval to Parkview. Although the Planning Commission recognized that the development would result in a loss of 84 parking spaces and that the zoning code required more than 90 additional off-street parking spaces to accommodate the use, it decided — as authorized under the zoning code — to waive the parking requirements thereof, concluding that the City had sufficient reserve parking to accommodate the development. The next day, the City's Mayor signed a purchase and sale agreement conveying the parking lot to Parkview to begin construction.
Petitioners — individuals who own local businesses near the project site — commenced this combined CPLR article 78 proceeding and action for declaratory judgment [*2]seeking, among other things, to annul the negative SEQRA declaration and the resolution granting site plan approval to Parkview. Petitioners asserted, among other things, that (1) the Planning Commission failed to take a hard look at the project's parking impacts as required by SEQRA, (2) the sale of the parking lot to Parkview violated the public trust doctrine, (3) the CEO's October 2019 determination that the project was "in compliance with the parking requirements" set forth in the zoning code was arbitrary and capricious, and (4) site plan approval should not have been granted because the zoning code prohibits grade level dwelling units.
Following joinder of issue,[FN1] Supreme Court dismissed the petition/complaint. As relevant here, the court concluded that petitioners lacked standing to challenge the Planning Commission's actions insofar as their claim that the project would cause economic harm to their businesses by creating a parking shortage did not constitute a cognizable injury-in-fact.[FN2] In any event, Supreme Court determined that the Planning Commission undertook the requisite hard look at the parking impacts associated with the project, and the City's conveyance of the parking lot to Parkview did not violate the public trust doctrine. The court rejected petitioners' remaining contentions as unavailing. Petitioners appeal.
Contrary to petitioners' contention, Supreme Court properly determined that they lack standing to challenge the negative SEQRA declaration. To establish standing in the SEQRA context, petitioners were "obliged to establish both an injury-in-fact and that the asserted injury [was] within the zone of interests sought to be protected by [SEQRA]" (Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1258 [2017] [internal quotation marks, brackets and citation omitted]; see Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1439 [2020]; Matter of Village of Canajoharie v Planning Bd. of Town of Florida, 63 AD3d 1498, 1501 [2009]). The injury must be "environmental and not solely economic in nature" (Matter of Widewaters Rte. 11 Potsdam Co., LLC v Town of Potsdam, 51 AD3d 1292, 1294 [2008] [internal quotation marks and citation omitted]; see Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 9 [2014]), and petitioners "must not only allege, but if the issue is disputed must prove, that their injury is real and different from the injury most members of the public face" (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 306 [2009]; see Matter of Hohman v Town of Poestenkill, 179 AD3d 1172, 1175 [2020]). Claims of environmental injury that are based upon mere "conjecture or speculation" will not suffice (Matter of Village of Woodbury v Seggos, 154 AD3d at 1258 [internal quotation marks and citation omitted]; Matter of Shapiro v Torres, 153 AD3d 835, 836 [2017]).
Supreme Court determined[*3], and we agree, that the alleged harms suffered by petitioners were either economic in nature or too speculative to establish a cognizable injury. In their amended petition/complaint, petitioners explained that they own various businesses within close proximity to the parking lot and rely on the space to provide parking for their employees and clients. They expressed concern that the project would, among other things, "exacerbate . . . congestion and traffic delays" and reduce available parking in the area. Three of the petitioners also averred that the proposed development "would obstruct scenic views" from their business, with one of them explaining that he can observe a "scenic view of the hills" from a picture window in his office.
Although petitioners have established that their businesses are within close proximity to the project site, that fact alone does not confer automatic standing in the SEQRA context (see Matter of Hohman v Town of Poestenkill, 179 AD3d at 1174; Matter of Barrett v Dutchess County Legislature, 38 AD3d 651, 653 [2007]). Petitioners' allegations largely hinged on economic business concerns occasioned by an alleged decrease in available parking (see generally Matter of Board of Fire Commrs. of the Fairview Fire Dist. v Town of Poughkeepsie Planning Bd., 156 AD3d 621, 623 [2017]), and their claim relating to traffic impacts "fail[s] to demonstrate an environmental injury different from that suffered by the public at large" (id.; see Matter of Shelter Is. Assn. v Zoning Bd. of Appeals of Town of Shelter Is., 57 AD3d 907, 909 [2008], lv dismissed 12 NY3d 797 [2009]). Although the obstruction of a scenic view may constitute an environmental injury within the zone of interests sought to be protected by SEQRA (see Matter of Barrett v Dutchess County Legislature, 38 AD3d at 654; Matter of Save Our Main St. Bldgs. v Greene County Legislature, 293 AD2d 907, 908-909 [2002], lv denied 98 NY2d 609 [2002]), the concerns espoused by certain petitioners regarding potential adverse scenic impacts to their businesses were undeveloped and otherwise too speculative to establish standing in these circumstances (see Matter of Brummel v Town of N. Hempstead Town Bd., 145 AD3d 880, 882 [2016], lv denied 29 NY3d 903 [2017], cert denied 138 S Ct 516 [2017]). We also note that the project site is located in a "mixed use" district (MU-1) — which permits the type of development contemplated — and, according to the full environmental assessment form, there are no officially designated scenic or aesthetic resources located within five miles (compare Matter of Cady v Town of Germantown Planning Bd., 184 AD3d 983, 986 [2020]; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of N.Y., 259 AD2d 26, 34 [1999]).
In any event, even assuming the alleged obstruction of the hills from petitioners' businesses constituted a sufficiently concrete environmental injury in these circumstances, a review of the record reveals [*4]that the Planning Commission took the requisite "hard look" at the parking impacts associated with the project and "made a reasoned elaboration of the basis for its determination" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1166 [2018] [internal quotation marks and citations omitted]; compare Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d 1256, 1259-1260 [2018]). Parking was a prominent concern throughout these proceedings. In rendering its determination, the Planning Commission relied on a 2018 study conducted by an independent consulting firm, which addressed the adequacy of parking in relation to the City's downtown revitalization plan. This study identified just under 500 public spaces available within the district, and a reserve of over 200 spaces even if the plan were implemented. Notably, two of the projects contemplated under the revitalization plan were never constructed, thereby preventing a loss of additional reserve parking. With this information, the Planning Commission could rationally conclude that the parking needs of this project would be met by existing parking resources (see Matter of Van Dyk v Town of Greenfield Planning Bd., 190 AD3d 1048, 1049-1050 [2021]).
We are unpersuaded by petitioners' contention that the City's conveyance of the parking lot to Parkview violated the public trust doctrine. Under the public trust doctrine, "a municipality, without specific legislative sanction, may not permit property acquired or held by it for public use to be wholly or partly diverted to a possession or use exclusively private" (Matter of Lake George Steamboat Co. v Blais, 30 NY2d 48, 51 [1972]; see Matter of Avella v City of New York, 29 NY3d 425, 431 [2017]; Matter of Glick v Harvey, 25 NY3d 1175, 1180 [2015]). In their amended verified petition/complaint, petitioners explained that the subject property was bequeathed to the City in 1922 by the last will and testament of George I. Wilber (hereinafter the Wilber devise). The Wilber devise directed that use of the parcel should be "limited . . . to City-Town-and-County Public Buildings and for Park and Municipal purposes only." Respondents concede that the public trust doctrine applies to the conveyance insofar as the Wilber devise manifested an intent to dedicate the land for a public use, which has been maintained in such capacity since 1931 as a municipal parking lot (see Matter of 10 E. Realty, LLC v Incorporated Vil. of Val. Stream, 17 AD3d 472, 474 [2005]). Where, however, the transfer of such property continues to serve a public purpose, no violation of the public trust doctrine occurs (see Long Is. Pine Barrens Socy., Inc. v Suffolk County Legislature, 159 AD3d 805, 807-808 [2018], lv denied 32 NY3d 910 [2018]; Mason v Clifton Park Water Auth., 302 AD2d 818, 819-820 [2003]). Therefore, the determinative question is whether the project proposal contemplates the continued public use of the land[*5].
Although the project site has been sold to a private entity, this fact alone does not render the use exclusively private (see Port Chester Yacht Club v Village of Port Chester, 123 AD2d 852, 853 [1986]). Here, the parcel was conveyed for the purpose of constructing affordable workforce housing for artists and middle-income residents in connection with the City's downtown revitalization initiative. The purchase and sale agreement included a warranty that Parkview would construct the project in compliance with these City-approved plans and explicitly referenced low-income housing credits as part of the project financing. The residential portion of the building would "contain exhibition spaces for artists to showcase their work" and the Hartwick College Grain Innovation Center had the stated purpose of providing testing, product development and support resources for small-scale, local grain industry professionals. In other contexts, this Court has found the construction of certain affordable housing to be a "public use" (Matter of Keegan v City of Hudson, 23 AD3d 742, 743 [2005], lv denied 6 NY3d 705 [2006]; see Matter of Russin v Town of Union of Broome County, 133 AD2d 1014, 1015 [1987]), and, when considering the educational and revitalization components of the plan, we are persuaded that the project may be fairly characterized as such. Accordingly, Supreme Court correctly determined that the conveyance of the property without legislative approval did not violate the public trust doctrine.
Petitioners also contend that the CEO's October 2019 determination that the project was "in compliance with the parking requirements" set forth in the zoning code was arbitrary and capricious, and that the Zoning Board of Appeals improperly refused to entertain petitioners' administrative appeal from that determination. We need not address the substance of these claims, as the zoning code authorized the Planning Commission to waive the provision of any required parking spaces on its own volition upon appropriate consideration of relevant material (see City of Oneonta, New York, Zoning Ordinance § 300-61 [G] [2]), and the record contains a sworn affidavit from a member of the Planning Commission averring that the CEO's determination "had absolutely no impact" on its decision to effect such a waiver. Petitioners' arguments in this respect are therefore irrelevant to the ultimate conclusion reached by the Planning Commission. Petitioners' remaining contentions, to the extent not expressly addressed herein, have been considered and found to be lacking in merit.
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Hartwick College was the only respondent who did not answer the petition/complaint. Any references to "respondents" collectively herein refer to all named respondents except Hartwick College.

Footnote 2: Parkview and the City challenged petitioners' standing to bring the proceeding/action in their verified answers.