Matter of Seneca Meadows, Inc. v Town of Seneca Falls (2024 NY Slip Op 06435)

Matter of Seneca Meadows, Inc. v Town of Seneca Falls

2024 NY Slip Op 06435

Decided on December 20, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 20, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., BANNISTER, MONTOUR, DELCONTE, AND HANNAH, JJ.

648 CA 23-01878

[*1]IN THE MATTER OF SENECA MEADOWS, INC., PETITIONER-PLAINTIFF-RESPONDENT,
v
TOWN OF SENECA FALLS, TOWN OF SENECA FALLS TOWN BOARD, RESPONDENTS-DEFENDANTS, DIXIE C. LEMMON AND CONCERNED CITIZENS OF SENECA COUNTY, INC., RESPONDENTS-DEFENDANTS-APPELLANTS. 

LAW OFFICE OF DOUGLAS H. ZAMELIS, COOPERSTOWN (DOUGLAS H. ZAMELIS OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS. 
NIXON PEABODY LLP, ROCHESTER (ERIC M. FERRANTE OF COUNSEL), FOR PETITIONER-PLAINTIFF-RESPONDENT.

 Appeal from an order and judgment (one paper) of the Supreme Court, Seneca County (Daniel J. Doyle, J.), dated June 8, 2023, in a proceeding pursuant to CPLR article 78 and declaratory judgment action. The order and judgment granted the motion of petitioner-plaintiff for partial summary judgment on its first cause of action and declared Town of Seneca Falls Local Law No. 3 of 2016 invalid. 
It is hereby ORDERED that the order and judgment so appealed from is reversed on the law without costs, the motion is denied and the declaration is vacated.
Memorandum: Petitioner-plaintiff, Seneca Meadows, Inc. (SMI), commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking, inter alia, to annul the negative declaration issued by respondent-defendant Town of Seneca Falls Town Board (Board) under the State Environmental Quality Review Act ([SEQRA] ECL art 8) with respect to a proposed local law that would prohibit the construction or operation of a waste management facility within respondent-defendant Town of Seneca Falls. SMI moved for partial summary judgment on its first cause of action, for failure to comply with the requirements of SEQRA. Respondents-defendants Dixie C. Lemmon and Concerned Citizens of Seneca County, Inc. (collectively, respondents) opposed the motion, contending, inter alia, that SMI lacked standing to assert a cause of action under SEQRA. Supreme Court, inter alia, determined that SMI had standing to assert a cause of action under SEQRA and granted the motion. We reverse.
It is well settled that "[t]he purposes of SEQRA . . . are to encourage productive and enjoyable harmony with our environment; to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources; and to enrich the understanding of ecological systems, natural, human and community resources important to the people of the state" (Matter of Turner v County of Erie, 136 AD3d 1297, 1297 [4th Dept 2016], lv denied 27 NY3d 906 [2016] [internal quotation marks omitted]; see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 777 [1991]). To that end, the overriding principles and objectives of SEQRA include the "maintenance of a quality environment for the people of this state" (ECL 8-0103 [1]), and that "every citizen 'has a responsibility to contribute to the preservation and enhancement of the quality of the environment' " (Society of Plastics Indus., 77 NY2d at 777, quoting ECL 8-0103 [2]).
"Despite the responsibility of every citizen to contribute to the preservation and enhancement of the quality of the environment, there is a limit on those who may raise [*2]environmental challenges to governmental actions" (Turner, 136 AD3d at 1297). Those seeking to raise a SEQRA challenge must establish both "an environmental injury that is in some way different from that of the public at large, and . . . that the alleged injury falls within the zone of interests sought to be protected or promoted by SEQRA" (Matter of Tuxedo Land Trust, Inc. v Town Bd. of Town of Tuxedo, 112 AD3d 726, 727-728 [2d Dept 2013] [emphasis added]; see Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 310-311 [2015]; Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 308-309 [2009, Pigott, J., concurring]).
Respondents contend that the court erred in determining that SMI is entitled to a presumption of standing based upon its status as the owner of a solid waste management facility directly impacted by enactment of the local law. We agree. Although "[a] property owner in nearby proximity to premises that are the subject of [an agency] determination may have standing to seek judicial review without pleading and proving special damages, because adverse effect or aggrievement can be inferred from the proximity" (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 409-410 [1987]), the "status of neighbor does not . . . automatically provide the entitlement . . . to judicial review in every instance" (id. at 414). The petitioner must also establish "that the interest asserted is arguably within the zone of interest to be protected by the statute" (id. [internal quotation marks omitted]; see Matter of East Thirteenth St. Community Assn. v New York State Urban Dev. Corp., 84 NY2d 287, 295-296 [1994]; Society of Plastics Indus., 77 NY2d at 772-773).
Here, SMI failed to establish, or even allege, that it had suffered or would suffer an environmental injury. SMI submitted, inter alia, the affidavit of its managing director, who averred only that SMI would suffer economic injuries if the local law was not annulled. Although SMI, as the owner of a solid waste management facility, is entitled to a presumption that it would, in fact, suffer such economic harm, it failed to establish that it has standing to raise a SEQRA challenge because economic injury does not fall within the zone of interest SEQRA seeks to protect (see Society of Plastics Indus., 77 NY2d at 773-774; Matter of Peachin v City of Oneonta, 194 AD3d 1172, 1175 [3d Dept 2021]; Tilcon N.Y., Inc. v Town of New Windsor, 172 AD3d 942, 945 [2d Dept 2019]; see generally Sun-Brite Car Wash, 69 NY2d at 412). Indeed, unlike the petitioner in Matter of Har Enters. v Town of Brookhaven (74 NY2d 524 [1989]), SMI failed to allege even "unspecified 'eventual environmental consequences' " (id. at 527) that would result from the adoption of the local law.
Thus, inasmuch as SMI does not have standing to challenge the Board's actions pursuant to SEQRA, the court erred in granting SMI's motion for partial summary judgment on its first cause of action.
All concur except Smith, J.P., and Bannister, J., who dissent and vote to affirm in the following memorandum: Petitioner-plaintiff, Seneca Meadows, Inc. (SMI), owns and operates the only solid waste management facility situated within respondent-defendant Town of Seneca Falls (Town). The Town, in response to the concerns expressed by certain residents about SMI's facility, targeted the facility for closure by enacting the Town of Seneca Falls Local Law No. 3 of 2016, which prohibits the continued operation of solid waste disposal facilities in the Town beyond December 31, 2025, i.e., upon expiration of SMI's current permits. SMI commenced the instant hybrid proceeding and action alleging, in relevant part, that the Town failed to comply with the requirements of the State Environmental Quality Review Act (SEQRA). Supreme Court, after concluding that SMI had standing to challenge the Town's compliance with SEQRA, determined that the Town failed to take the requisite "hard look" at the relevant areas of environmental concern in enacting the local law, and therefore declared the local law invalid. On appeal, the majority now concludes that SMI was required, and failed, to allege an environmental injury to establish standing to challenge the Town's compliance with SEQRA in enacting the local law. In our view, the majority has made an error of law by applying a general standing rule instead of its applicable exception, and we therefore respectfully dissent.
The Court of Appeals' decision in Matter of Gernatt Asphalt Prods. v Town of Sardinia (87 NY2d 668 [1996] [Gernatt])—which built upon its prior cases including Matter of Har Enters. v Town of Brookhaven (74 NY2d 524 [1989] [Har])—arguably provides the clearest articulation of the standing requirements for SEQRA purposes that apply to an owner of property that is the subject of a challenged local law. As explained in Gernatt, "[g]enerally, standing to [*3]challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute" (87 NY2d at 687). Moving from general standing principles to specific types of property owners, the Court of Appeals proceeded to explain that "[a] nearby property owner may have standing to challenge a proposed zoning change because aggrievement may be inferred from proximity" (id. [emphasis added]). "The proximity alone permits an inference that the [nearby property owner] challenger possesses an interest different from other members of the community" (id.). "Standing to raise a SEQRA claim involves this variation"—i.e., the nearby property owner variation—under which "a SEQRA challenger must 'demonstrate that it will suffer an injury that is environmental and not solely economic in nature' " (id., quoting Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433 [1990] [emphasis added]). Critically, the Court of Appeals then immediately continued by explaining that there is a distinction between the standing requirements for an owner of property nearby and the owner of property that is the subject of the local law: "However, where the challenge is to the SEQRA review undertaken as part of a zoning enactment, the owner of property that is the subject of rezoning need not allege the likelihood of environmental harm" (id., citing Har, 74 NY2d at 529 [emphasis added]).
The difference between our understanding of the law and the majority's understanding appears to stem largely from our divergent readings of Har. In the majority's view, the property owner in Har had SEQRA standing because it alleged that there would be "unspecified 'eventual environmental consequences' " from the subject town's targeted rezoning of its property from commercial to residential (74 NY2d at 527). In our view, however, the Court of Appeals in Har did not tie the property owner's standing to its unspecified allegation of future environmental consequences. To the contrary, in addressing the question "whether an owner of property which is the subject of a zone change must plead specific environmental harm to challenge the sufficiency of an agency's efforts to comply with SEQRA," the Court of Appeals answered that no such allegation was needed: "We hold that where, as here, the very subject of the proposed action . . . is petitioner's property, petitioner is presumptively adversely affected by the violation of SEQRA requirements and that no such specific allegation is necessary" (id. at 526).
Even more precisely, Har explained that, "[i]n deciding whether an owner has standing to ask a court to review SEQRA compliance, the question is whether it has a significant interest in having the mandates of SEQRA enforced" (id. at 529). The Court of Appeals reasoned that "[a]n owner's interest in the project may be so substantial and its connection to it so direct or intimate as to give it standing without the necessity of demonstrating the likelihood of resultant environmental harm. For even though such an owner cannot presently demonstrate an adverse environmental effect, it nevertheless has a legally cognizable interest in being assured that the decision makers, before proceeding, have considered all of the potential environmental consequences, taken the required 'hard look', and made the necessary 'reasoned elaboration' of the basis for their determination" (id.). "Under these rules"—i.e., the aforementioned legal principles and without any reference to the property owner's vague factual allegation of future environmental impacts mentioned in passing earlier in the decision—the Court of Appeals "h[e]ld that this property owner has a legally cognizable interest in being assured that the town satisfied SEQRA before taking action to rezone its land" (id.). Stated differently, the property owner had a cognizable interest in SEQRA compliance "by virtue of its status as owner of the property," not by virtue of its fleeting environmental consequences allegation (id. at 530).
The Court of Appeals' rule that an owner whose property is the very subject of the proposed governmental action—unlike a "nearby" or "proximate" property owner—need not allege environmental injury to have SEQRA standing is based upon sound public policy to ensure adherence to our State's commitment to environmental protection. It was "evident" to the Court of Appeals that "if any party should be held to have a sufficient interest to objectwithout having to allege some specific harmit is an owner of property which is the subject of a contemplated rezoning" (id. at 529). That is because, as in Har itself, often "only the owner of the affected property has a sufficient incentive to bring a review proceeding" (id.). Consequently, "[t]o adopt the [contrary] rule . . . and deny standingabsent an allegation that the owner will suffer some adverse environmental consequencewould insulate decisions such as this from judicial review, a result clearly contrary to the public interest" (id.).
To summarize, in the Court of Appeals' own words, "[i]n Har, we held that a property [*4]owner whose land was targeted for rezoning had a 'legally cognizable interest in being assured that the town satisfied SEQRA' and that the owner consequently had standing to bring a SEQRA challenge, even absent a showing of specific environmental harm" (Mobil Oil Corp., 76 NY2d at 434; see Gernatt, 87 NY2d at 687). Stated differently, although the general rule requires that a SEQRA challenger demonstrate that it will suffer an injury that is environmental and not solely economic in nature, there is an exception to that general rule under which "the owner of property that is the subject of rezoning need not allege the likelihood of environmental harm" (Gernatt, 87 NY2d at 687; see Mobil Oil Corp., 76 NY2d at 434-435; Har, 74 NY2d at 529).
We have articulated and applied the exception on several occasions. In fact, Gernatt arrived at the Court of Appeals through the Fourth Department. Although the Court of Appeals reversed our determination on other grounds, it agreed with us that the petitioner there had standing to challenge the zoning ordinance amendments as violative of SEQRA (see Gernatt, 87 NY2d at 677, 687-688). In that regard, on the zone of interest requirement for standing, i.e., the second prong of the test, we stated that, even in the absence of a demonstration of likely environmental harm, "the second prong is satisfied where, as here, the owner of property affected by a zoning amendment is the party challenging the SEQRA review of that legislation" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 208 AD2d 139, 149 [4th Dept 1995], revd on other grounds 87 NY2d 668 [1996]).
Our determination in Tupper v City of Syracuse (71 AD3d 1460 [4th Dept 2010]) provides another illustrative example. There, the City of Syracuse enacted an ordinance requiring that owner-occupied properties that are sold to an absentee owner have a certificate of suitability, which would not be issued if the property did not meet off-street parking capacity requirements (id. at 1461). The plaintiffs, consisting of absentee property owners and an association of property owners in the city's university district, commenced an action seeking to invalidate the ordinance on the ground that the city failed to issue a negative declaration under SEQRA with respect to the environmental impact of the ordinance (id. at 1460-1461). In determining that the plaintiffs had standing to commence the action, we first noted that the absentee owners may be impacted by the ordinance insofar as it required that the absentee property owners obtain a certificate of suitability if they had not previously done so and required that they obtain a new certificate of suitability in the event that they made changes to the interior or exterior components of their properties (id. at 1461). No other impact was required to confer standing. We concluded in particular that the plaintiffs were "not barred from challenging the SEQRA review based on their failure to allege the likelihood of environmental harm" (id.). Quoting Gernatt and Har, we explained that, "[i]nasmuch as [the] plaintiffs are challeng[ing] . . . the SEQRA review undertaken as part of a zoning [ordinance amendment, they] . . . need not allege the likelihood of environmental harm . . . In those circumstances, the property owner has a legally cognizable interest in being assured that [the] [defendants] satisfied SEQRA before taking action to [amend the zoning ordinance]" (id. [internal quotation marks omitted]). In other words, consistent with the exception to the general rule as set forth by the Court of Appeals, the absentee property owners had standing to raise a SEQRA challenge to the enactment based solely on their status as owners of property targeted by the ordinance, even without any allegation of environmental harm (see id.; see also Matter of Up State Tower Co., LLC v Village of Lakewood, 175 AD3d 972, 972-973 [4th Dept 2019]; accord Gernatt, 87 NY2d at 687; Mobil Oil Corp., 76 NY2d at 434; Har, 74 NY2d at 526-527, 529).
The practice commentaries also reflect the state of the law as just articulated. One leading treatise on New York environmental law explains simply: "The Court of Appeals has held that the owner of property which is the subject of a zone change automatically has standing under SEQRA to challenge the rezoning, without having to plead specific environmental harm" (2 Michael B. Gerrard et al., Environmental Impact Review in New York § 7.07 [Oct. 2024 update] [emphasis added]). That treatise further explains that, while the general rule holds that economic injury alone cannot form the basis for standing to bring a SEQRA challenge, "[t]his rule does not apply, however, to the owner of property whose rezoning is being challenged on SEQRA grounds" (id.). Other New York commentators have been even more blunt: "The [C]ourt of [A]ppeals has eliminated the 'zone of interest' requirement for a property owner who wishes to bring a SEQRA challenge to the rezoning of its property" (J. Kevin Healy & Philip E. Karmel, Environmental Law and Regulation in New York § 4:42 [9 West's NY Prac Series, Sept. 2024 update] [emphasis added]). National commentators reviewing our law likewise agree that "[t]he courts have also had no difficulty granting standing to property owners whose use of [*5]their property is affected by a governmental action, such as a downzoning or permit denial" (Daniel R. Mandelker et al., NEPA Law and Litigation § 12:8 [Aug. 2024 update]).
Applying the law here, SMI has established standing to challenge the Town's compliance with SEQRA because it is the owner and operator of a solid waste management facility, which is affected by the subject local law that removes solid waste management facilities from the permitted uses within the Town upon the upcoming expiration of SMI's permits (see Gernatt, 87 NY2d at 687-688; Har, 74 NY2d at 529-530; Up State Tower Co., LLC, 175 AD3d at 972-973; Tupper, 71 AD3d at 1461).
In our view, none of the cases relied upon by the majority warrant a different conclusion. Those cases are inapposite because, for example, they involve application of the general rule for SEQRA standing where the challenges were to laws or regulations of general applicability that did not target the use of specific property (see Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 763-781 [1991] [Society of Plastics]). Indeed, the Court of Appeals has specifically distinguished the general standing rule requiring environmental injury applicable in Society of Plastics from the exception to that general rule for targeted property owners (see Gernatt, 87 NY2d at 687). Other cases relied upon by the majority involve matters in which the challengers were nearby, neighboring property owners in proximity to the subject premises (see e.g. Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 409-416 [1987]; Matter of Peachin v City of Oneonta, 194 AD3d 1172, 1173-1174 [3d Dept 2021]) or were not even property owners in close proximity to the challenged project (see Tilcon N.Y., Inc. v Town of New Windsor, 172 AD3d 942, 943 [2d Dept 2019]; Matter of Turner v County of Erie, 136 AD3d 1297, 1297-1299 [4th Dept 2016], lv denied 27 NY3d 906 [2016]).
Relatedly, to the extent that the majority's citation to Society of Plastics suggests reliance on the proposition that SMI does not have standing because it is the equivalent of a "special interest group[ ] or pressure group[ ], motivated by economic self-interests," that is attempting "to misuse SEQRA" to further its own purposes (77 NY2d at 774), we cannot agree with that view. SMI is not an outside special interest group; it is the "property owner whose land was targeted" by the Town's local law (Mobil Oil Corp., 76 NY2d at 434). Under Court of Appeals' precedent, it is "beside the point . . . that the true motive for [SMI's] objection [may be] its desire to proceed with its [continued operation of the solid waste management facility], not its concern with the [T]own's adherence to SEQRA" (Har, 74 NY2d at 530). "That [SMI] concededly has an economic interest in the outcome does not negate the standing that it otherwise has by virtue of its status as owner of the property" (id.).
We do not read the majority's decision to be adopting the semantic distinction urged by some respondents-defendants that there is a legally significant difference between a local law styled as a zoning law and one enacted pursuant to police power. We agree with the majority's implicit determination that the urged distinction is legally insignificant. On that point, we note briefly that the government's zoning authority is just a species of its police power (see Town of Delaware v Leifer, 34 NY3d 234, 240 [2019]; Sun-Brite Car Wash, 69 NY2d at 412; see also Gernatt, 87 NY2d at 683-684), and that the targeted property owner exception to the general SEQRA standing rules has been applied in a non-zoning context (see Matter of Skenesborough Stone v Village of Whitehall, 229 AD2d 780, 780-781 [3d Dept 1996]). Indeed, the Court of Appeals has commented that the urged distinction between a zoning law and a local law enacted pursuant to police power would not preclude an appropriate party from meeting the requirements to satisfy the standing doctrine to challenge an action under SEQRA (see Society of Plastics, 77 NY2d at 778-779). We further suggest that it would invite gamesmanship to allow the government to avoid challenges to its compliance with SEQRA merely by enacting a general ban pursuant to its police powers rather than a more specific zoning law. That is particularly true in a case like this, where the Town could easily have obtained the same result—a ban on solid waste management facilities—by enacting a general ban directed at the sole solid waste management facility within its boundaries or rezoning SMI's property for other use (compare Gernatt, 87 NY2d at 687-688).
For all of the foregoing reasons, we conclude that SMI—as the owner of the property targeted by the local law—has standing to challenge the Town's compliance with SEQRA. Inasmuch as we further conclude that the court properly determined that the Town failed to take the requisite "hard look" at the relevant areas of environmental concern in enacting the local law, [*6]we would affirm the order and judgment.
Entered: December 20, 2024
Ann Dillon Flynn
Clerk of the Court